## BARTLE v. TRAVELERS INS. CO.

No. 12291.

United States Court of Appeals Fifth Circuit.

Dec. 14, 1948.

---

[2] United States v. One Dodge Coupe, 43 F.Supp. 60.

470

J. Edwin Smith, of Houston, Tex., and A. L. Bevil, of Kountze, Tex., for appellant.

Marion Phillips and William C. Harvin, both of Houston, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

This is an action for death benefits under the Workmen's Compensation Act of Texas, brought by the widow of F. B. Bartle, who, prior to his death, was a distributing agent of the Gulf Refining Company at Conroe, Texas. The Refining Company, asserting that Bartle was an independent contractor, denies that any employer-employee, or master-servant, relationship existed, and thus is raised the chief issue in the case.

Four years prior to Bartle's death he had entered into, and had been in the performance of, a written contract with Gulf Refining Company for the sale and distribution, on the commission basis, of Gulf petroleum products in the vicinity of Conroe. A copy of the contract is attached to a stipulation of the parties and on this stipulation and contract the Court below granted the Defendant's motion for a summary judgment. The widow, appealing, contends that: (1) it was a jury question as to whether her husband was an employee or an independent contractor; (2) it was a jury question as to whether Clause Eight of the contract (wherein Bartle agreed that neither he nor any of his employees should be deemed or construed to be employees of the Refining Company within the meaning of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., and that if any court should hold to the contrary notwithstanding the stipulation, notice was thereby given that he elected to reserve his rights at the common law and the law of Texas and not to be bound by the Workmen's Compensation Act) was within the terms of Sec. 3a of Article 8306, Texas Civil Statutes, or whether such clause was inconsistent with Sec. 14 of Article 8306, Texas Civil Statutes, providing that an agreement of an employee to waive rights to compensation under the Act should be invalid.

We think that these were questions of law and that under the stipulation the case was ripe for a summary judgment—one way or another. No facts are in dispute but only the interpretation of the contract in the light of the law of Texas. It is, therefore, necessary for us to examine the terms of the contract and the applicable provisions of State law in order to determine whether or not the husband of the Appellant was engaged in the performance of an independent contract at the time of his death, or whether the applicable relationship between him and the Refining Company was that of master and servant. In considering the nature of his employment we note that the preamble of the contract states the purpose for which the contract was entered into was that the Company "desires to arrange for the sale and distribution of petroleum products at Conroe * * * and F. B. Bartle, * * * had agreed to undertake the marketing of said Company products, in said territory, on commission." We believe that in any study of the contract, its provisions relating to the prime purpose, viz., the sale and distribution of petroleum products, should command larger consideration than those provisions in the contract for the making of reports and the like, that are merely incidental to the keeping of books, records, etc., and which are no part of the actual process of making sales or deliveries of petroleum products, but are a part of the functions that the Company, by its contract, and of necessity, was obligated to perform.

An analysis of the salient provisions of the contract reveals that the Company was to do the following: (a) furnish warehouse and storage facilities; (b) ship to Bartle such stocks of pertoleum products as the location, in its judgment, might justify; (c) fix the prices at which the products would be sold; (d) pass upon and approve or disapprove—prior to sales—any sales other than for cash; (e) render a written statement to Bartle showing sales during the preceding month; (f) remit to Bartle the net commission earned on monies collected at the rates of commission agreed upon; (g) upon termination of the contract, settle with Bartle for any amounts then found due and owing. The acts or functions to be performed by the Company were separated in the contract from the function of Bartle, to wit, the marketing and delivery of petroleum products. Of necessity Bartle could have no part in manufacturing, shipping, ownership, or in fixing the prices of the commodities which belonged to the Company and which he was only to sell and deliver. Moreover, since Bartle was to sell the products of the Company only for cash, unless prior approval of sales on credit was first obtained, and since the commodities sold were not owned by him, and since the commission was to be paid by the Company out of monies collected and remitted, the Company of necessity was required to have the reports and keep the books in order to know what had become of its property and in order to pay the commissions due Bartle.

These functions were in no sense repugnant to a relation of owner and independent contractor, nor restrictive, or retentive of control, as to the details and manner by which Bartle performed the functions of selling and delivering petroleum products.

The fact that there are mutual covenants to be performed by each of the parties in carrying out the contract is in no wise inconsistent with the existence of the relationship of employer and independent contractor any more than would the performance of such covenants and functions be repugnant to the existence of the relationship of master and servant.

The Company, without doubt, had the legal right to employ the deceased to sell and distribute its products as an independent contractor, and in such contract of employment to retain unto itself the performance of such functions and duties as were not thereby committed to, or imposed upon, its contractee, and we know of no rule or reason in the law why such a contract would not be binding, as written, upon the parties thereto and likewise upon the parties standing in the shoes of, or in right of, either of the parties. The courts have not hesitated to say to an employer, "If you retain or have the right to control your contractee as to the manner and details of the work, he shall be deemed your servant and you shall be liable for his negligent acts in doing such work." The general holdings of the courts that the rights of those who are neither parties nor privies to such a contract will be gauged by that which the law deems the contractual relationship to be rather than by that which parties who seek to free themselves of responsibility have, by words, asserted it to be, are not applicable here. This principle will not be applied so as to relieve a party to a contract—or his privies—of his clear and valid agreements. In the absence of ambiguity, fraud, duress, or other invalidating factors, the Court will not read into the contract, at the behest of one of the parties, that which the parties, in fair dealing and at arm's length, have not written into it.

Bartle in the present case expressly covenanted and agreed that he was an independent contractor and not an employee or servant to be directed and controlled at the will of the Refining Company. No evidence appears in the record that he ever disputed this agreement or took any position inconsistent with it. The contract contains no ambiguity. There are no vitiating factors of duress, fraud, or concealment, but, on the contrary, the contract was admittedly in full force and effect at the death of Bartle. His widow, suing in his right, stands in his stead, and is—even as he was—bound by the plain wording of his unambiguous and non-fraudulent contract.[1]

Moreover, were the problem here one for the determination of rights of third persons, or persons not privy to the contract, to recover against the Refining Company for personal injuries alleged to have been caused by the negligence of Bartle, in and about the business of the Refining Company, as was the case in Helms v. Sinclair Refining Company, 5 Cir., 170 F.2d 289, we, nevertheless, would be obliged to hold that on account of the absence of retention by the Refining Company of the right to direct and control Bartle as to the manner and detail of the performance of his contract in the sale and distribution of petroleum products, he would be an independent contractor and not a servant. It will be seen from the contract: (1) that the Company retained no right of control over the warehouse and bulk plant which it turned over to Bartle; (2) it had no voice as to the servants employed by Bartle, nor as to how many employees he needed, nor as to the class or type of employees, nor in the hiring and firing, nor determination of their hours of labor, nor in the ownership or maintenance of the trucks and other equipment which Bartle owned and utilized in selling and delivering the products of the Company; (3) that Bartle determined the make, the size, and number of trucks; (4) that he selected and maintained his own office, furniture, and equipment; (5) that he paid for all the utilities, such as telephone, heat, lights, and water; (6) that he determined the hours at which the

---

[1] 15 Tex.Jur., p. 173, Sec. 27.

plant would be opened and closed; (7) that neither he nor his employees ever submitted to physical examinations such as the employees of the Refining Company were required to take; nor did they ever sign an employment contract, or participate in any of the benefit plans to which employees of the Company were eligible; nor·did they ever obtain any discount on the purchase of Company products such as employees were entitled to receive. Bartle took out, in an agency of his own selection, and paid for out of his funds, public liability and property damage insurance on his own vehicles. He also did local advertising at his own expense and in his own name. The amount of the profits or losses was the product of his own energy and judgment, or lack thereof. In the light of these facts and under the law of the State of Texas,[2] we would hold that even at the suit of one not a party or privy to the contract, Bartle was an independent contractor in and about the sale and distribution of petroleum products and in and about the furnishing, maintenance, and operation of the equipment used in connection with such sales and distribution. There is nothing in the record to show that the installation of the gasoline pump—in which endeavor Bartle was engaged at the time of his injury—was an enterprise undertaken on behalf of the Company as distinguished from an enterprise undertaken within the independent contract. Cf. Helms v. Sinclair Refining Company, supra.

The Appellant relies heavily upon the case of Maryland Casualty Company v. Kent, Tex.Com.App., 3 S.W.2d 414, but we do not think that the Kent case is controlling for the reason that the contract in that case apparently did not have embraced therein Paragraphs Seven and Eight of the present contract.[3]

Sec. 3a of Article 8306, Tex.Rev. Civ.Stat.1925, provides that:

"An employe of a subscriber shall be held to have waived his right of action at common law or under any statute of this State to recover damages for injuries sustained in the course of his employment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claims said right * * *."

In the light of this statute it does not appear that Paragraph Eight of the contract, quoted in the footnote, was—in the absence of any evidence of coercion, duress, fraud, or other invalidating vice—contrary to the purpose and intent of the Texas law. On the contrary, it would seem that Bartle was

[2] In ·23 Tex.Jur. p. 545, Sec. 5, there is the statement that:

"The outstanding and ultimately decisive consideration in determining the independence of the contract is the employer's right to control the details of the work. Actual interference with or regulation of details by the employer is, however, not of importance, except as it may constitute evidence; the test is the right to control."

Sec. 6 provides in part:

"The right of the employer to exercise a limited control without thereby destroying the independent character of the contract is recognized. Certainly supervision of the work by the employer, or by his inspector, to see that it is done in conformity to the undertaking does not conclusively negative the independence of the contract."

[3] "Seventh: The Consignee shall have entire charge of the management and operation of said business; he shall pay all license fees, and shall furnish all necessary equipment, drays, trucks, tank trucks, etc., and shall furnish his own helpers and employees, and pay all expenses of conducting said business. The Consignor reserves no supervision or control over the Consignee in the facilities, employees, and methods to be used and employed by him in carrying out the purposes of this contract, and shall in no event be responsible for negligence of the Consignee, or his employees.

"Eighth: It is expressly agreed and stipulated that neither the Consignee nor any employees of Consignee shall be deemed or construed to be employees of Consignor within the meaning of the Workmen's Compensation Act of the State of Texas; and in the event the Courts shall decide that, notwithstanding this stipulation, the Consignee is such employee, then Consignee elects and hereby gives notice in advance that he reserves all his rights at common law and under the statutes of Texas other than the Compensation Act, and will not be bound by said Workmen's Compensation Act. Consignee further agrees that he will carry compensation and public liability insurance as to his employees and himself, so far as he legally can."

within the Act in giving notice of his election to stand upon his rights at the common law rather than under the Compensation Act. Having freely made a permissible election, it would appear that he, his heirs, and legal representatives, would be bound thereby.

The judgment of the lower Court is Affirmed.