HOUSTON FIRE & CASUALTY INSURANCE COMPANY, Appellant,

v.

FARM AIR SERVICE, Inc., Appellee.

No. 10670.

Court of Civil Appeals of Texas. Austin.

June 10, 1959.

Rehearing Denied July 1, 1959.

Niemann & Babb, Austin, for appellant.

Barnes & Barnes, Beaumont, for appellee.

GRAY, Justice.

This appeal is from a summary judgment. The venue question of the cause was before this Court in Farm Air Service, Inc. v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 309 S.W.2d 510.

Appellant is an insurance company authorized to write workmen's compensation insurance and is a member of the Texas Workmen's Compensation Assigned Risk Pool. Art. 5.76, Texas Insurance Code, V.A.T.S. Appellee is a Texas corporation authorized "to own and operate aeroplanes to be used in aerial seeding rice, oats and pasture lands; aerial dusting for killing weeds and insects and for spraying fertilizers; and owning and operating necessary trucks and other motor equipment in connection therewith."

Appellant sued appellee to recover on a sworn account for unpaid premiums alleged to have accrued on two policies of workmen's compensation insurance issued to appellant by appellee under subsection (d) of Art. 5.76, supra. Such premiums are for coverage of airplane pilots.

Appellee answered and thereafter both parties filed motions for summary judgment. These motions were heard, appellant's was overruled and appellee's was granted.

The trial court found that the airplane pilots were, as a matter of law, independent contractors, and, in the alternative, that said pilots are farm laborers within the meaning of Art. 8306, Sec. 2, Vernon's Ann.Civ.St.

Appellant here presents four points. These are to the effect that: the record shows, as a matter of law, that the airplane pilots are employees within the meaning of the Workmen's Compensation Act; if such pilots are not employees as a matter of law then a genuine issue of fact is presented as to whether appellee entered into contracts with such pilots for the purpose and with the intention of avoiding liability

for the payment of insurance premiums in violation of Sec. 6 of Art. 8307, Vernon's Ann.Civ.St.; the trial court erred in finding that such pilots are farm laborers, and the policies of insurance issued to appellee show that the pilots were provided workmen's compensation insurance.

The affidavit of E. W. Long, who was the agent for the Workmen's Compensation Assigned Risk Pool, states that he negotiated with appellee for the purpose of providing it with workmen's compensation for its employees. This affidavit states:

"At the time of these conferences, the agents and officials of the Farm Air Service, Inc., stated to me in plain and unequivocal terms that they could not carry any workmen's compensation insurance upon any of their employees if by so doing it made it necessary for them to carry workmen's compensation insurance upon airplane pilots.

"When we had reached this stage in our negotiations, I procured from Farm Air Service, Inc., an application for workmen's compensation insurance upon their shop employees and ground employees, and their office force, but in the application did not indicate or designate that we were attempting to or consenting to provide insurance for them upon their airplane pilots, it being the understanding between both the Defendant in this cause and me as an agent of the Plaintiff in this cause that no such policy of insurance would be accepted by Farm Air Service, Inc., or issued to them by the carrier recommended by the Workmen's Compensation Assigned Risk Pool.

"At no time did any person acting for Farm Air Service, Inc., ever agree or consent to accept workmen's compensation insurance policies covering their airplane pilots and at no time did I ever attempt to sell to them a policy of insurance covering their airplane pilots, * * *.

" * * * that in our dealings, reference to these two policies, WC-313836 and WC-571675, it was our consensus of opinion that the proper code number to be used in the designation of airplane pilots was 7240, and that code number does not appear in the insuring clause on either of those two policies; that in fact, the first time that I ever learned that any attempt was being made to collect premiums under code number 7420 was when, in the summer months of 1955, I was presented with a bill on which, for the first time, code number 7420 appeared; * * *."

Code No. 7420 reads:

"Air craft operations—Public exhibition involving stunt flying, racing or parachute jumping, dusting or spraying—all members of flying crew."

Appellee's president said that contracts were made with the airplane pilots and that the purpose of such contracts was to avoid payment of the high premiums on pilots under the Workmen's Compensation Act. Except for names the contracts are similar and, omitting the formal parts, we quote such contract:

"The Farm Air Service, Inc., hereby and herein contracts with the said Pilot to plant, spray, fertilize, and to do other services for area farmers where a plane is required to perform the service, said Pilot being employed as an Independent Contractor, by virtue of which employment the Farm Air Service, Inc., hereinafter called Contractor, contracts with the said Pilot to obtain certain results pointed out by Contractor but in the doing of which the Pilot will control his own methods, his own efforts, and his own means of accomplishment, the Contractor surrendering any right of direction or control over him in obtaining the results, the Contractor furnishing to the Pilot a plane in an airworthy condition, and the Pilot agreeing to check the plane to determine that fact and from day to day to check same to see that it does maintain airworthiness, assuming the responsibility of reporting all details and in all things grounding the plane when it is not airworthy and suitable to be used, it being the Pilot's duty at all times to point out to Contractor's mechanics any defect and anything necessary to be done to keep the plane airworthy, and the Pilot shall be the sole judge as to when the plane is airworthy, and agrees not to fly or to use the plane when it is not airworthy. The Contractor agrees at all times merely to point out to the Pilot the listed contracts as to time and place, leaving absolutely and one hundred percent to the Pilot the right to control and all control of the operations necessary to obtain the results required in each case for the farmer who engages the Contractor for the job in question.

"It is agreed and understood and herein and hereby stipulated that the contractor in furnishing the plane and in doing the necessary mechanical work and in obtaining the general contract from the area farmers for services to be performed has no other responsibility and has no right of direction and/or control over the operation save and except as to the results to be obtained by the pilot, and that the pilot enters into this contract with that understanding and with the definite and affirmative understanding and statement that he is entering into this job as an independent contractor, controlling all of his movements and his operations and reserving unto the said Pilot the right to so control same, and the Contractor affirmatively surrenders all rights or claim of right to control him in the operation, the Contractor merely requiring proper results in accordance with the contracts of employ-

ment with the area farmers. The Pilot's commission will be 20% of his gross receipts."

In his brief appellant says that appellee's business

"is located at Nome in Jefferson County where appellee makes contracts with various farmers to seed, spray or fertilize their crops by use of its airplanes. The contract is always between appellee corporation and the farmer. Appellee then sublets the work to airplane pilots who actually fly the aircraft and do the spraying, seeding or fertilizing. Checks in payment for this service are always made payable to Farm Air Service, Inc.

"All of the approximately fourteen aircrafts used in this work are owned by appellee. Appellee furnishes and pays for all the gasoline and other fuel necessary to operate the airplanes. The planes are repaired and maintained by appellee's employees. When there is no flying to be done, the pilots work in appellee's shops repairing and overhauling the planes and for such work are paid on the same basis as other mechanics. For flying, the pay of the pilots is calculated on a commission basis, but they are paid every two weeks along with other employees. Members of the ground crew, flagmen, truck drivers and all other persons connected with performing appellee's contracts are employees of Farm Air Service, Inc. It is only the airplane pilots appellee contends are independent contractors and then only when they are flying; however, once out of the plane and in the shops working on the planes, even appellee agrees they are then employees."

There is no provision in the contract, in appellant's statement, or in the evidence to show that appellee had any right of supervision of the flying operations, but only the right to require proper results.

■ Under the above statement of appellant, if the contract legally created the status of the pilots as independent contractors while flying the airplanes, appellee was an employer of the pilots while they were working in the shops but when the pilots were flying they were independent contractors. Such a state of facts may properly exist. Standard Ins. Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362, 365. There it was held that a driller was an independent contractor while drilling the well to pay lime but after the lime was reached the oil company's superintendent took control over the finishing of the well and the driller then became an employee. The court applied the test of the right of control of the work and, even though the contract employed McKee to drill and finish the well, said:

"One may entrust work to an independent contractor and retain such control over the doing of a part of the work as to create the relation of master and servant in so far as that part of the work is concerned."

Appellant asserts that the testimony of appellee's president to the effect that the contract was entered into to avoid payment of high insurance premiums on pilots makes Sec. 6 of Art. 8307, supra, applicable, and that thereby the pilots are employees.

■ We quote Sec. 6 in full:

"If any subscriber to this law with the purpose and intention of avoiding any liability imposed by its terms sublets the whole or any part of the work to be performed or done by said subscriber to any sub-contractor, then in the event any employé of such sub-contractor sustains an injury in the course of his employment he shall be deemed to be and taken for all purposes of this law to be the employé of the subscriber, and in addition thereto such employé shall have an independent right of action against such sub-contractor, which shall in no way be affected by any compensation to be

received by him under the provisions of this law."

In Traders & General Ins. Co. v. Frozen Food Express, Tex.Civ.App., 255 S.W.2d 378, Er. ref., n. r. e., we held that the term "sub-contractor" as used in section 6, supra, includes "independent contractor." This holding was contrary to Fort Worth Lloyds v. Mills, Tex.Civ.App., 213 S.W.2d 565, Er. ref., n. r. e. We have examined the application for writ of error in the Frozen Food Express case but not in the Mills case. There we find that the application contained an assignment of error that "The Court of Civil Appeals erred in holding that Section 6, of Article 8307, Vernon's Annotated Civil Statutes, includes independent contractors."

The question then was presented to the Supreme Court and its action on the application is conclusive that subcontractor as used in section 6, supra, includes independent contractor.

■ The above inclusion can apply only if the conditions stated in section 6 exist. The section provides that a person shall be an employee of the subscriber if: (1) any subscriber "with the purpose and intention of avoiding any liability imposed * * * sublets all or any part of the work to be performed * * * by the subscriber to any sub-contractor," and (2) "then in the event any employé of such sub-contractor sustains an injury * * * he shall be deemed to be and taken for all purposes of this law to be the employé of the subscriber * * *". Here we have no injured employee of the subcontractor (independent contractor) and we are unable to read the section other than to make the injured employee of the subcontractor an employee of the subscriber. It does not purport to make the subcontractor such employee but only makes an injured employee of the subcontractor an employee of the subscriber for all purposes of the compensation law. Here appellant undertakes to extend the provisions of the section so as to make the independent contractors (subcontractors) employees of the sub-

scriber. This would be writing a provision into the section that the Legislature did not see fit to include therein.

In Traders & General Ins. Co. v. Frozen Food Express, supra, the question presented was: Were truck drivers and their helpers employees of the subscriber, or were they employees of an independent contractor? Moreover it may be said that the facts in that case show that the subscriber exercised the right of control over the truck drivers and their helpers. The application of the test of the right of control over the employee is the supreme test. Standard Ins. Co. v. McKee, supra.

Appellant says that appellee could not insure part of its employees and not insure the pilots. This assertion of course is based on its contention that the pilots are not independent contractors.

In Hartford Accident & Indemnity Co. v. Christensen, 149 Tex. 79, 228 S.W.2d 135, 139, the court said that:

"* * * an employer is not compelled at all events to carry compensation insurance on his employes has been repeatedly recognized by our decisions. For example, where the employer has two different kinds of business involving different risks, pay rolls and premiums, he may insure those engaged in one business and leave those in the other uninsured; and where the employe in such situation sues for workmen's compensation benefits his rights are determined by the specific terms of the policy. Mulkey et al. v. Traders & General Ins. Co., Tex.Civ.App., 93 S.W.2d 582, er. ref., citing numerous authorities."

However before applying this test to the facts here it is proper to determine the status of the pilots.

■ In support of the above contention appellant treats the contract, supra, as a mere subterfuge but in oral argument it was frank to admit that if appellee could make the pilots independent contractors then the contract did so. The contract

places the control of the flying of the planes in the pilots which is the test. Standard Ins. Co. v. McKee, supra. Even the testimony of appellee's president does not dispute the issue of control. The provisions in the contract for the protection of the airplanes (appellee's property) does not dispute the pilot's control of the plane while flying.

It may be said that the contracts were entered into for the purpose and with the intent on the part of appellee of avoiding payment of workmen's compensation premiums on the pilots. However the pilots were parties to the contracts and no other employees are affected. Under these conditions there is no reason in law why the contract is not binding as written between the parties and binding upon parties standing in the shoes or in the right of either of the parties. Bartle v. Travelers Ins. Co., 5 Cir., 171 F.2d 469. Further it was not the intent of E. W. Long, the agent, to include the pilots in the policies and the indorsements on the policies did not include them. The question presented then is: As a matter of law were the pilots included within the policies thereby creating appellee's liability for payment of the premiums sued for?

■■■■ We have above stated the reasons why the provisions of Sec. 6, supra, are not applicable to the facts here. It is hardly necessary to cite authorities to show that an independent contractor is not an employee within the terms of the Workmen's Compensation Act. 45 Tex.Jur. p. 415, Sec. 40. Sec. 1 of Art. 8309 of the Act which defines "Employee" excludes independent contractor. Further parties by contract may legally create the status of independent contractor and, subject to what we have already said supra, this legal status need not be further discussed. Also, since the Act recognizes the legal status of independent contractor a contract creating that status would not violate Sec. 14 of Art. 8306 declaring invalid agreements to waive right to compensation under the Act.

We have not been cited to any Texas case, and we have not found any, deciding the exact question here presented. Even the cases from other jurisdictions deciding the question are not numerous and are not in agreement. Some of the cases approach the question on the basis that parties may legally enter into a contract creating the status of independent contractor and hold that if the contract was sufficient to create the bona fide relationship of independent contractor then that the fact that such contract was entered into for the purpose of avoiding the Workmen's Compensation Act would not make it illegal.

York v. Industrial Commission, 223 Wis. 140, 269 N.W. 726, 729, 107 A.L.R. 841, was decided on facts similar to the facts here. The court said:

"It is also plain that the purpose behind the arrangement was to evade liability for compensation under the Workmen's Compensation Act. But if the contracts were valid, that they were entered into for this purpose does not bring the company and the individual partners within the act."

and further that:

"The individual partners possessed the constitutional right by contract to change their status from that of mere servants to that of independent contractors."

In support of its holding the court cites and discusses a prior Wisconsin case, and also Michigan and New York cases. It also cites and discusses opposing authorities. One Justice dissented.

In the annotations following the above case reported in 107 A.L.R. 841 and at page 855 other cases are annotated. We quote in part the language of only one of these. Robinson v. Younse Lumber Co., 8 La.App. 160.

"If courts should permit those engaged in industrial enterprises to escape liability in this way, the door would be left wide open to all kinds of

subterfuge to escape liability, and the act would be a dead letter in the books."

It appears that the above case involved an injury to an employee of the alleged independent contractor. That is not the case here and supra we have discussed the provisions of section 6 of our statute. Further what we have said as to section 6 affords protection to the injured employee and the penalties provided in Sec. 3a of Art. 8309 affords remedies to the insurer sufficient to deter subterfuges.

The contracts before us created the legal status of the pilots as independent contractors and they were not included in the policies. Accordingly appellant's points one and four are overruled. We have accepted the testimony of appellee's president as establishing the fact that the contracts were entered into for the purpose of avoiding payment of compensation premiums. This renders point two immaterial and we do not reach point three which involves the alternative finding of the trial court.

The judgment of the trial court is affirmed.

Affirmed.