J. P. RICHARDS, EMPLOYEE v. NATIONWIDE HOMES, EMPLOYER, SHELBY MUTUAL CASUALTY CO., CARRIER.

(Filed 15 January, 1965.)

**1. Master and Servant § 90—**

A person seeking to recover benefits under the N. C. Workmen's Compensation Act has the burden of proving that he comes within the purview of the Act.

**2. Master and Servant § 48—**

A subcontractor may be an independent contractor as to certain parts of the work and merely an employee in regard to other parts, but in his character as an independent contractor he is not covered by the Compensation Act and the court has no jurisdiction to apply its provisions to him in such instance. G.S. 97-2.

**3. Same—**

The provisions of G.S. 97-19 do not impose liability on the employer for injuries received by an independent contractor or a subcontractor personally when the injuries arise in the performance of the independent employment.

4. **Same—**

Whether an injured person is an independent contractor or a subcontractor who is an independent contractor or an employee within the meaning of the Compensation Act is to be determined by the common law test in the absence of pertinent statutory provisions.

5. **Master and Servant § 3—**

An independent contractor is ordinarily one who undertakes to produce a given result at a stipulated price without the supervision or control of the person employing him except as to the result of the work.

6. **Courts § 2—**

A challenge to jurisdiction may be made at any time, and if the court finds at any stage of the proceeding that it is without jurisdiction it should dismiss the proceeding.

7. **Master and Servant § 93—**

Jurisdictional findings of the Industrial Commission are not conclusive on appeal to the Superior Court, and where the appeal is based upon exceptions to the findings of the Industrial Commission that plaintiff was an employee and not an independent contractor, it is the duty of the Superior court on appeal to review the evidence and make independent findings therefrom in respect to the controverted jurisdictional fact.

8. **Master and Servant § 48—   Evidence held to disclose that claimant was an independent contractor and not an employee.**

Evidence disclosing that claimant signed a contract for the performance of labor necessary to the construction of a house for a lump sum according to plans and specifications and materials furnished by defendant, defendant having contracted with the owner of the lot for a completed residence, that defendant's agent checked two or three times a week to see if claimant was following the plans and specifications, notified him of any changes therein, but did not give orders as to what time work should begin or how long work should continue during the day, or exercise any control in the manner in which the work was performed, etc., *is held* to disclose that claimant was a subcontractor who was an independent contractor in the performance of the work and therefore was not covered by the Compensation Act for an injury suffered by him personally.

APPEAL by claimant from *Hubbard, J.*, January 1964 Session of NEW HANOVER.

Claim for compensation under the North Carolina Workmen's Compensation Act.

Nationwide Homes entered into a contract with W. C. Graham to construct a house for him. Nationwide Homes then on 23 November 1961 entered into a written contract with claimant to build this house. This written contract is as follows:

## "SUB-CONTRACT AGREEMENT

"THE AGREEMENT, made this 23 day of November, 1961, NATIONWIDE HOMES hereinafter known as the CONTRACTOR and J. P. Richards with mailing address

, hereinafter known as the SUB-CONTRACTOR.

"WITNESSETH: That the CONTRACTOR and the SUB-CONTRACTOR for the consideration, hereinafter named, agree as follows:

"1. The SUB-CONTRACTOR agrees to do and complete in a satisfactory manner, all labor on a house size 20′ x 36′ known as Chicago in printed brochure of the CONTRACTOR. More specifically to include a completed house on the outside including two coats of paint. Also to include: Moving all finish materials into house after completion

"Framing to be on (24″) XXX Centers.

"2. The SUB-CONTRACTOR further agrees to guard materials from damage waste and pilfering. And to turn in all delivery tickets.

"3. The SUB-CONTRACTOR further agrees to completely clean up ready for inspection after completion of work.

"4. Upon a satisfactory final inspection, the CONTRACTOR agrees to pay the SUB-CONTRACTOR for all work, the total sum of $302.40.

"5. The SUB-CONTRACTOR warrants that he is licensed to do SUB-CONTRACT work or has regularly worked as a SUB-CONTRACTOR.

"6. The SUB-CONTRACTOR warrants that he carries Workmen's Compensation insurance or authorizes the CONTRACTOR to deduct 3% to help offset cost of same.

"7. The SUB-CONTRACTOR further agrees to complete the house within 20 days after he has been authorized by the CONTRACTOR to commence work. Failure to do so automatically gives the CONTRACTOR the right to have the work completed and deduct expenses of same from contract amount as stated above. The SUB-CONTRACTOR will advise the CONTRACTOR and the CUSTOMER when he will have the job ready for final inspection.

"WITNESS our signatures and seals this 23 day of November, 1961.

"Telephone No.      SUB-CONTRACTOR /s/ J. P. Richards

RO-3-6829          NATIONWIDE HOMES  Wilmington

                                        N. C. Inc.

                   BY          /s/ A. G. Truelove, Jr.

"Authorize to commence work.      23 November 1961

"Name of Sub-Contractor's Insurance Company:

                   Policy No.

"Job Name          Waterman Carl Graham — #3"

"NW-16-A

On 22 November 1961 claimant signed the following Sub-contractor's Workmen's Compensation Form:

"SUB-CONTRACTOR'S WORKMEN'S COMPENSATION
                   FORM

"Date      22 November 1961          Brunswick County,

                                        North Carolina

                                     City or County & State

"It is understood and agreed that I ⟨I⟩, the am ⟨am⟩ an individual ⟨a Partnership⟩ engaged in the carpentry contracting business.

"In entering into a contractual relationship with Nationwide Homes to build for that corporation certain homes to their specifications as agreed in the contract, I ⟨we⟩ understand that, in respect to Workmen's Compensation insurance as required by the Workmen's Compensation Law of *North Carolina* (State), such Workmen's Compensation insurance as is carried by Nationwide Homes does not apply to injuries sustained by me ⟨us⟩, (an) independent contractor⟨s⟩. The Workmen's Compensation insurance carried by Nationwide Homes does apply to injuries sustained by any employees that may be engaged by me ⟨us⟩ in the completion of the contract.

"Signed:                    Witness:

"/s/ J. P. Richards          /s/ A. G. Truelove, Jr."

On 29 November 1961 claimant fell when he was nailing ceiling joists in the construction of this house, and as a result sustained injuries. At the hearing before the hearing commissioner, the parties entered into two stipulations: (1) Shelby Mutual Casualty Company was compensation carrier for Nationwide Homes, the alleged employer. (2) On 29 November 1961 claimant sustained an injury by accident. The hearing commissioner, upon the facts found by him, which included the written agreement entered into by and between claimant and Nationwide Homes, concluded that claimant was an independent contractor, and not an employee, and denied compensation. From such decision, claimant appealed to the Full Commission.

The Full Commission hearing the appeal consisted of the chairman, a commissioner, and a deputy commissioner. The Full Commission, with a commissioner dissenting, entered an order finding that claimant in his work was supervised by Nationwide Homes, concluded that he was an employee of Nationwide Homes at the time he was injured, and at such time was not an independent contractor or a subcontractor, and awarded compensation. From such order defendants appealed to the superior court, assigning as error the following findings of fact by the Full Commission as not supported by any competent evidence: (1) Claimant was an employee of Nationwide Homes, and sustained an injury by accident arising out of and in the course of his employment; (2) plaintiff was supervised by an employee of Nationwide Homes, who would tell him how he wanted the house built, gave claimant the plans, and if there were any alterations to be made, he would supervise such operations; and (3) claimant was an employee of Nationwide Homes when he was injured, and was not at such time an independent contractor or a subcontractor. Defendants further assigned as error the failure of the Full Commission to find that claimant was an independent contractor. Defendants also assigned as error the finding as to claimant's average weekly wage. Defendants also assigned as error the conclusion of the Full Commission that on 29 November 1961 claimant was employed by Nationwide Homes, and on said date sustained an injury by accident arising out of and in the course of his employment with Nationwide Homes, as being erroneous in that it is contrary to law and is not supported by any competent evidence. Defendants further assigned as error the award to claimant made by the Full Commission.

When the appeal came on to be heard by Judge Hubbard, the parties stipulated that he might find the facts, and render judgment in or out of the county, and in or out of session. Upon consideration of the

record and arguments of counsel, Judge Hubbard entered judgment, as set forth below:

### FINDINGS OF FACT

"1.   On or about November 23, 1961, plaintiff and Nationwide Homes entered into a contract for the construction of a house. Plaintiff agreed to complete a house according to certain specifications and Nationwide Homes agreed to pay him a lump sum of $302.40 upon satisfactory final inspection. The contract did not reserve to Nationwide Homes any control over the method or manner of Plaintiff's performance of the work.

"2.   On or about November 22, 1961, Plaintiff and Nationwide Homes executed a 'Sub-Contractor's Workman's Compensation Form' in which it was stated that Plaintiff was an individual engaged in the carpentry contracting business and that Plaintiff understood he would not personally be covered by Workman's Compensation Insurance.

"3.   The plans and specifications for the house to be constructed by Plaintiff were furnished Plaintiff by A. G. Truelove, Jr., Division Manager for Nationwide Homes. At the request of the purchaser of the house, Truelove changed the plans and specifications during the course of the work so as to eliminate a partition wall and reduce the house from three bedrooms to two. Mr. Truelove exercised no other supervision over the manner or method of construction.

"4.   Plaintiff was assisted in the work by a Mr. Shingleton, Plaintiff hired Mr. Shingleton himself and paid him out of the lump-sum contract price which Plaintiff was to receive.

"5.   Plaintiff furnished his own tools, selected his own hours of work, was free to come and go as he pleased, to accept other employment if he chose to do so, and was not subject to discharge because he selected one method of doing the work rather than another.

"6.   Plaintiff was engaged in an independent business, calling or occupation. He was not in the regular employ of Nationwide Homes. He had the independent use of his skill, knowledge, or training in the execution of his work and was subject to no control by Nationwide Homes, provided only that he completed the work according to the plans and specifications within the agreed time limit.

"7.  On November 29, 1961, Plaintiff fell and received an injury during the course of his work on the house he was building for Nationwide Homes."

## CONCLUSIONS OF LAW

"1.  Plaintiff was an independent contractor and not an employee at the time of the injury and the accident giving rise thereto.

"2.  The employer-employee relationship did not exist between plaintiff and Nationwide Homes at the time of the accident.

"3.  The Industrial Commission is without jurisdiction over Plaintiff's alleged claim.

"4.  The record disclosed that Plaintiff was paid a lump sum of $302.40 to complete a house within 20 days, that out of this sum Plaintiff paid Mr. Shingleton an undisclosed sum to assist him; the record therefore does not support the Commission's finding that Plaintiff's average weekly wage was $85.00."

Whereupon, he ordered that the proceeding be remanded to the Industrial Commission with direction that it be dismissed.

From this judgment claimant appeals.

*J. Harvey Turner for claimant appellant.*
*Poisson & Barnhill by M. V. Barnhill, Jr., for defendant appellees.*

PARKER, J.  Claimant has one assignment of error and that is "that the court erred in signing and entering the judgment."

The parties stipulated that claimant on 29 November 1961 sustained an injury by accident. The decisive question presented for decision is whether claimant at the time he sustained his injury by accident was an employee of Nationwide Homes, as contended by claimant, or an independent contractor, as contended by defendants, or a sub-contractor, who was an independent contractor as to his contractor Nationwide Homes when he was injured.

A person who seeks to recover benefits under our Workmen's Compensation Act must come within its terms, and must be held to proof that he is in a class embraced in the Act. *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137.

An injured person is entitled to compensation under our Act only if he is an employee of the party from whom compensation is claimed

at the time of his injury or death. G.S. 97-2; *Scott v. Lumber Co.*, 232 N.C. 162, 59 S.E. 2d 425; *Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673.

An independent contractor is not a person included within the terms of our Act, and the Industrial Commission has no jurisdiction to apply the Act to a person who is not subject to its provisions. *Hayes v. Elon College, supra; Perley v. Paving Co.*, 228 N.C. 479, 46 S.E. 2d 298; *Hart v. Motors, supra.*

A subcontractor employed to do certain work may be an independent contractor as to certain parts of the work and merely a servant or employee of the one employing him as to the residue of the work. When a subcontractor is an independent contractor, the relation of master and servant, or employer and employee, does not exist between the contractor and subcontractor. *Greer v. Construction Co.*, 190 N.C. 632, 130 S.E. 739; 57 C.J.S., Master and Servant, §§ 582, 583. In the *Greer* case, the Court said:

> "One for whom work is done is not the master or employer of him who has contracted to do the work when by virtue of the terms of the contract, the latter is an independent contractor; nor does the relationship exist between a contractor and his subcontractor when the latter is an independent contractor."

G.S. 97-19 of our Act imposes liability, under certain specified circumstances, on the principal contractor or employer for injuries and death to employees of his independent contractor or of his subcontractor, but the provisions of G.S. 97-19 do not extend to his independent contractor personally or to his subcontractor personally when he is an independent contractor. *Greene v. Spivey*, 236 N.C. 435, 73 S.E. 2d 488; *Bryson v. Lumber Co.*, 204 N.C. 664, 169 S.E. 276; *Francis v. Franklin Cafeteria*, 123 Conn. 320, 195 A. 198; *Centrello's* Case, 232 Mass. 456, 122 N.E. 560; *Miles v. West Virginia Pulp & Paper Co.*, 212 S.C. 424, 48 S.E. 2d 26, 32; *Houston Fire & Casualty Ins. Co. v. Farm Air Service*, Tex. Civ. App., 325 S.W. 2d 860, *rehearing denied* 1 July 1959; 99 C.J.S., Workmen's Compensation, § 107, f, pp. 370-71.

In the absence of pertinent statutory definitions, whether a person is an independent contractor, or a subcontractor who is an independent contractor, or an employee within the meaning of our Workmen's Compensation Act is to be determined by the application of the ordinary common law tests. *Scott v. Lumber Co., supra; Hayes v. Elon College, supra;* 58 Am. Jur., Workmen's Compensation, § 138.

In *Bryson v. Lumber Co., supra,* the Court said:

> "Generally speaking, an independent contractor is one who undertakes to produce a given result, but so that in the actual execu-

tion of the work he is not under the orders or control of the person for whom he does it, and may use his own discretion in matters and things not specified. [Citing authority.]

"One who represents another only as to the results of a piece of work, and not as to the means of accomplishing it, is an independent contractor and not a servant or employee. *Powell v. Const. Co.*, 88 Tenn. 696."

In *Scott v. Lumber Co., supra,* the Court said:

"An independent contractor is one who exercises an independent employment, and contracts to do specified work for another by his own methods without subjection to the control of his employer, except as to the result of his work. His one indispensable characteristic is that he contracts to do certain work, and has the right to control the manner or method of doing it. The test to be applied in determining whether the relationship of the parties under a contract for the performance of work is that of employer and employee, or that of employer and independent contractor is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has the right of control, it is immaterial whether he actually exercises it."

A challenge to jurisdiction may be made at any time. *Baker v. Varser,* 239 N.C. 180, 79 S.E. 2d 757; *Spaugh v. Charlotte,* 239 N.C. 149, 79 S.E. 2d 748; *Miller v. Roberts,* 212 N.C. 126, 193 S.E. 286; *Johnson v. Finch,* 93 N.C. 205, 208. If a court finds at any stage of the proceedings that it is without jurisdiction over the subject matter of a proceeding or case, it cannot enter a judgment in favor of either party; it can only dismiss the proceeding or case for want of jurisdiction. *Burgess v. Gibbs,* 262 N.C. 462, 137 S.E. 2d 806; *In re Davis,* 248 N.C. 423, 103 S.E. 2d 503; *Henderson County v. Smyth,* 216 N.C. 421, 5 S.E. 2d 136; *Branch v. Houston,* 44 N.C. 85; *New Orleans & Bayou Sara Mail Co. v. Fernandez,* 12 Wall (U.S.) 130, 20 L. Ed. 249; *Corbett v. Boston & M. R. Co.,* 219 Mass. 351, 107 N.E. 60, 12 A.L.R. 683.

When a defendant-employer challenges the jurisdiction of the Industrial Commission, the findings of fact made by the Commission, on which its jurisdiction is dependent, are not conclusive on the superior court, but the superior court has the power, and it is its duty, on appeal, to consider all the evidence in the record, and to make therefrom

independent findings of jurisdictional facts. "This is necessary, to prevent the court from being forced into an act of usurpation, and compelled to give a void judgment." (*Branch v. Houston, supra*). *Hart v. Motors, supra; Aylor v. Barnes*, 242 N.C. 223, 87 S.E. 2d 269; *Buchanan v. Highway Commission*, 217 N.C. 173, 7 S.E. 2d 382; *Young v. Mica Co.*, 212 N.C. 243, 193 S.E. 285; *Francis v. Wood Turning Co.*, 204 N.C. 701, 169 S.E. 654; *Aycock v. Cooper*, 202 N.C. 500, 163 S.E. 569; Strong's North Carolina Index, Vol. 3, Master and Servant, § 93, pp. 290-91.

"As a general rule the court will not accept as conclusive findings of fact of the Commission concerning a jurisdictional question, but will weigh evidence relating thereto and make its own independent findings of fact." 100 C.J.S., Workmen's Compensation, § 763, (7), p. 1216. In 58 Am. Jur., Workmen's Compensation, § 533, it is stated: "It is well established that findings of fact entering into the establishment of jurisdiction of a compensation commission or other tribunal to make an award are subject to review by the courts."

These facts appear in the record: On 22 November 1961 claimant signed what is entitled a "Sub-contractor's Workmen's Compensation Form," which is marked defendant's Exhibit A, in which he states 'in substance that he is an individual engaged in the carpentry contracting business, and that in entering into a contractual relationship with Nationwide Homes to build for it certain homes to their specifications as agreed in the contract, he understands that, in respect to workmen's compensation insurance as required by the North Carolina Workmen's Compensation Act, such workmen's compensation insurance as is carried by Nationwide Homes does not apply to him, an independent contractor, that such insurance does apply to injuries sustained by any employees that may be engaged by him in the completion of the contract. Claimant's signature to this form was witnessed by A. G. Truelove, Jr., District Supervisor for Nationwide Homes. It is true claimant testified he did not read this form before he signed it. However, there is no evidence that he was illiterate, and there is no evidence that it was misrepresented to him, or that he was prevented from reading it. Mr. Truelove, a witness for the defendants, testified: "I am sure that I explained the meaning of Exhibit A to Mr. Richards before he signed it. * * * I told him Exhibit A meant that he and Mr. Saunders were working together. I told him that they had built the other house together; and I told him whichever one signed this would not be protected; and anybody else working on the job would be protected by Workmen's compensation but that whoever signed this contract would not be protected by Workmen's Compensation." On 23 November 1961

claimant entered into the subcontract agreement heretofore set forth. It is crystal clear from the "Sub-contractor's Workmen's Compensation Form" signed by claimant, and from the subcontract agreement entered into by and between him and Nationwide Homes, that he was engaged in an independent business, to wit, "carpentry contracting business," and that he was not in the regular employ of Nationwide Homes; that he contracted to construct a certain specified house at a fixed price; that he had the right to control the manner and method of doing the work without subjection to the control of Nationwide Homes except as to the result of his work, to wit, that it was to be done in a satisfactory manner. Claimant's subcontract agreement with Nationwide Homes reserved to Nationwide Homes no control whatever as to the manner or method of claimant's doing the work.

Claimant testified in substance, except when quoted: He had built one other house for Nationwide Homes of the same type as the house in the instant case. In respect to the house in the instant case, A. G. Truelove, Jr., District Supervisor of Nationwide Homes, told him how he wanted it built, gave him the plans, and if there were any alterations or additions to be made he would advise him. He had a written contract to build this house. Truelove saw that all the materials were on the job and if he needed anything extra, Truelove would order it. On the job in the instant case Truelove said if there were any additional changes inside, they would get together and go ahead and do it, and they did. He cut it from a three bedroom to a two bedroom house, and moved a bathroom over enough to accommodate the space he had left. Truelove told him to do that. That was a variation from the specifications first called for. "As far as I know, that was about it insofar as Mr. Truelove supervising or telling me what changes to make or how to vary workmanship or things like that. Mr. Truelove came around to look at the house and check on the work two or three times a week. When he did come around, he would look the job over and see if it was okay. If things weren't going okay, I am sure he would have said something." Mr. Truelove told him what to do, and he did it. Claimant testified in substance on cross-examination: Truelove gave him the plans and specifications, came by to check and see if he was following the plans and specifications, and notified him of any changes in the plans and specifications. He did not tell him what time to go to work, nor how long to work during the day. He did not tell him what tools to use. He supplied his own tools. He did carpentry work for anybody that asked him. Joe Shingleton helped him build the house, and he paid him out of the contract price.

A. G. Truelove, Jr.,. District Supervisor for Nationwide Homes testified in substance for defendants: He told claimant what changes W. C. Graham wanted made in the house.

It is stated in Strong's North Carolina Index, Vol. 3, Master and Servant, § 3, p. 189: "But where it is admitted or established that the contract provided that the party was to do certain work in accordance with plans and specifications furnished by the owner for a stipulated sum, the contract creates the relationship of principal and independent contractor as a matter of law."

The case of *Brown v. Truck Lines,* 227 N.C. 299, 42 S.E. 2d 71, relied on by claimant, is clearly distinguishable. Claimant contends that in that case there was a contract similar to the one in the instant case, and that the Court held that under that contract the relationship was that of employer-employee. The contracts in the two cases are entirely different. In the *Brown* case a carrier licensed to transport goods by truck in interstate commerce leased a vehicle from an owner not so licensed and attached its plates to the vehicle while engaged in transporting goods in interstate commerce. Under such circumstances the Court held that the contract of lease will be presumed to have been made in contemplation of the pertinent Federal Statutes and regulations of the Interstate Commerce Commission, requiring retention of control over the vehicle by the franchise owner, and drivers of such vehicle, as a matter of public policy, will be held employees of the carrier and not independent contractors for the purpose of determining liability of the carrier. In its opinion the Court said:

> "The operation of the truck was in law under the supervision and control of the interstate franchise carrier and could be lawfully operated only by those standing in the relationship of employees to the authorized carrier. Brown had no franchise right independent of the defendant."

Tested by the standard set forth in *Bryson v. Lumber Co., supra,* and in *Scott v. Lumber Co., supra,* we are of opinion that the evidence in the record fully supports Judge Hubbard's independent findings of fact, and that these findings of fact support his conclusions of law that claimant at the time of his injury by accident was an independent contractor and not an employee of Nationwide Homes, and that consequently the Industrial Commission was without jurisdiction over his claim, and these in turn support his judgment remanding the proceeding to the Industrial Commission with direction that it should be dismissed, though Judge Hubbard would have been more technically accurate if he had designated claimant a subcontractor who was an in-

dependent contractor in constructing the house in the instant case. The judgment of Judge Hubbard is

Affirmed.