**WESTERN CASUALTY & SURETY COMPANY, Appellant,**

v.

**Edward N. JONES, Appellee.**

**No. 356.**

Court of Civil Appeals of Texas.

Tyler.

June 6, 1968.

Key, Carr, Carr & Clark, Ronald M. Yeager, Lubbock, for appellant.

Wagonseller & Cobb, Gene S. Cobb and Robert L. Stogner, Lubbock, for appellee.

SELLERS, Justice.

This is a workmen's compensation case brought by Edward N. Jones against Western Casualty & Surety Company to recover for the loss of an eye and injury to the other eye. There is no question but that appellee lost an eye in the course of his employment on this appeal. There is a question of whether there was evidence sufficient to sustain the jury's finding that the other eye was injured to the extent of 45 percent of its vision. The view this Court takes of this appeal makes it unnecessary to pass upon the sufficiency of the evidence to sustain the partial loss of the other eye.

Dan Nelson, who carried workmen's compensation insurance with Western Casualty & Surety Company, the appellant, was in the water well drilling and pump business. He purchased equipment to drill the water wells together with the necessary trucks to operate the same. He operated the equipment for several months and became

convinced that he could not operate profitably so he stacked the equipment and quit drilling. Later, he got in contact with Paul Garrison, an experienced water well driller and, according to the testimony of Dan Nelson, they entered into an oral lease agreement by which Nelson would lease his equipment for the drilling of water wells together with the trucks used in connection with the drilling operation to Mr. Garrison for the sum of one-fourth the price received by Garrison for the drilling of water wells for the various farmers, and Garrison was to receive three-fourths. Garrison was to keep the equipment in good repair at his cost and was to furnish all of the fuel necessary to operate the equipment and was to hire his own help. The trucks had on the side the sign "Dan Nelson Drilling and Pump Service." Dan Nelson retained his pump service. He would install pumps in the wells drilled by Garrison, and Garrison had no interest in the pump service. The above is taken from the evidence given by Dan Nelson on the trial. Although Garrison was present at the trial, he was not called to testify by either party.

Garrison took charge of the equipment and hired appellee, Edward N. Jones, to work on the drilling crew with him. Garrison paid Jones twenty-five cents per foot for each well drilled. Garrison also hired Alfred Campbell to help operate the drilling rig. Campbell received his pay by the hour—$1.50 per hour. These men—Garrison, Campbell and Jones—constituted the drilling crew. Nelson would locate a farmer who wanted a well drilled and would agree with the farmer on a price for the work and in this way would sell the farmer a pump. After agreeing with the farmer, he would report back to Garrison who either accepted the contract or turned it down as too cheap. Garrison also drilled wells for other men who were in the pump business and were competitors of Nelson. When the contract as made by Nelson was accepted by Garrison and the well was drilled, Nelson would go back to the farmer, collect for the same, place the money in the bank,

issue Garrison his three-fourths of the money and keep the other one-fourth. On occasion, Nelson would advance Garrison some money on a job and would deduct the same from Garrison's three-fourths when the money was collected from the farmer. Garrison was not carried on Nelson's books as an employee and no deductions were made for Social Security or otherwise from Garrison's pay.

Nelson had two employees working for him in the pump service, and when a well was completed, these two employees would prepare the well and install the pump.

On the day that Jones was injured, the well had been drilled and the crew was in the process of moving to a new location. His injury came about through the use of some of the leased equipment. One or both of Nelson's employees were present at the time and one of them took Jones to the doctor. Nelson and Garrison were not present at the time Jones was injured but had gone to a new location to see about a slush pit.

Jones testified that one or both of Nelson's employees had on occasions assisted the drilling crew in the operation of the equipment. This, if it were true, was without the knowledge or instruction of Nelson.

Jones's suit is against Nelson's insurance carrier on the theory that Garrison was an employee of Nelson and not an independent contractor. It is not contended by Jones and the jury so found that Jones was not hired by Nelson, but the jury found that Garrison was an employee of Nelson and since he hired Jones, Jones likewise was an employee of Nelson.

■ The appellant has by appropriate assignments challenged the evidence to support this finding of the jury. We are of the opinion that this assignment must be sustained. Appellee asserts that this evidence which shows that the trucks used by Garrison had on them the sign above quoted, and the further fact that two of Nelson's pump service employees did some

work on the drilling operation and the further fact that Nelson would find the farmer where the well was to be drilled and agree on a price for the drilling which he would have to get okayed by Garrison was sufficient to support the jury's finding that Garrison was an employee of Nelson rather than an independent contractor.

With reference to control by Nelson of the drilling crew, both employees of Garrison testified as follows:

(Mr. Jones—Direct by Mr. Cobb):

"Q. Would he give instructions when he would come out?

"A. Well, if a motor or something like that had to be worked on, he would work on it. I'd help him, and anybody available would help him.

"Q. He would give you instructions while you were there helping him in that manner?

"A. Well, I just couldn't come up with anything right at the time.

"Q. You were there in the hearing of them. What about Mr. Garrison? Would you hear Mr. Nelson give instructions to Mr. Garrison there with regard to the operation of the well-drilling crew, in your hearing?

"A. I heard him tell him where to go and stuff like that. Of course, I didn't figure that was too much to me, but—

"Q. But you heard him?

"A. I have heard him tell him where to go and next location."

(Mr. Campbell—Direct by Mr. Cobb):

"Q. During the weeks or months that you were out there working, would you see Mr. Dan Nelson, the owner of Dan Nelson Pump and Drilling Service, out there on the jobs?

"A. Yeah, sometimes he would come out.

"Q. Would you see and hear him giving instructions out there on the jobs?

"A. Oh, he would tell us once in a while if we were making mistakes or what we were doing right or wrong.

"Q. Would he tell you if you were doing something wrong with his equipment and tell you to do it differently?

"A. I don't remember him ever telling me that I was tearing up his equipment or anything like that.

"Q. Did you hear him give any instructions or suggestions to anyone, say to use a particular piece of equipment, like a bit, in a certain way, as opposed to using it in a different way? Did you hear anything like that?

"A. I don't remember, if I did."

From what we have said above, it is clear to us that this case is controlled by the Supreme Court's decision in the case of Anchor Casualty Company v. Hartsfield, Tex., 390 S.W.2d 469. The facts in that case are set out in the opinion of the Court of Civil Appeals, 383 S.W.2d 455. In our opinion, the facts as stated are much stronger on the issue of employee relationship than the case under consideration, and the Supreme Court held there was no evidence to support the finding that Hartsfield was an employee but was an independent contractor.

■ Appellee insists that the record shows that the lease arrangement between Nelson and Garrison was made to relieve Nelson of the expense in carrying workmen's compensation insurance on the drilling crew. We do not so construe the record but if that was the motive, it would not render the contract invalid. Houston Fire

& Casualty Insurance Co. v. Farm Air Service, Inc., 325 S.W.2d 860.

The judgment of the trial court is reversed and here rendered that appellee take nothing and pay all costs of the suit.