HARTFORD ACCIDENT & INDEMNITY COMPANY V.
O. L. CHRISTENSEN ET AL.

No. A-2420. Decided February 15, 1950.
Rehearing overruled April 12, 1950.
(228 S. W., 2d Series, 135.)

80

*Baker, Botts, Andrew & Parrish* and *R. E. Keeton,* all of Houston, for petitioner, Hartford Accident and Indemnity Company.

The Court of Civil Appeals erred in holding that respondent Aaberg is entitled to assert that the policy coverage extended beyond the intention of the contracting parties (Insurance Company and Aaberg) since such extension is available only to the employee, who, in this case, is not asserting it, but it is being asserted by the employer. U. S. Fidelity & Guar. Co. v. Bullard Gin & Mill Co., 245 S. W. 720; Buice v. Service Mutual Ins. Co.

90 S. W.2d 342; Mulkey v. Traders & Gen. Ins. Co., 93 S. W. 2d 582.

*Combs, Brown & Brock* and *Warner F. Brock,* all of Houston, for respondent, O. L. Christensen.

The trial court and the Court of Civil Appeals erred in holding, as a matter of law, that Christensen was covered by the policy of workmen's compensation insurance, because it was not shown that the policy covered the welding shop at Alvin, where Christensen received his injury. The order of the Industrial Accident Board should be held a final and appealable award. Mingus v. Wadley, 115 Texas 551, 285 S. W. 1084; Oilmen's Reciprocal Assn. v. Harris, 116 Texas 247, 288 S. W. 809; Commercial Cas. Co. v. Hilton, 126 Texas 497, 87 S. W. 2d 1081.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This cause is a consolidation of two suits filed by O. L. Christensen, one for common-law damages and the other for workmen's compensation, for the loss of his right eye.

His damage suit was filed Sept. 4, 1946, against Q. J. Aaberg and one Passmore. He alleged that on April 24, 1946, they were operating a machine shop in Alvin, where he was their employee engaged in the scope of his employment; that while he was beating with a hammer on a piece of channel iron a bit of steel flew off either the hammer or iron and embedded itself in his eye, destroying the sight; that they were negligent in not providing him a safe place in which to work or appropriate tools and in not providing him with goggles or other adequate protection for his eyes.

In his compensation suit, filed April 2, 1947, against Hartford Accident and Indemnity Co., hereinafter called "Hartford", Christensen alleged that on April 24, 1946, he was an employee of Aaberg, who, under the name of Aaberg Truck & Tractor Co., was operating "machine shops, sales rooms, etc.," in Alvin and Angleton; that Aaberg was subject to the Workmen's Compensation law and was carrying a policy issued by Hartford, which covered Aaberg's employees including Christensen; that while Christensen "was working as an employee of said employer * * * engaged in his usual duties in the regular course and scope of his employment" his eye was injured and its sight destroyed.

Invoking Rule 174, T. R. C. P., Christensen moved to consolidate these suits because they "involve common questions of law and fact and grow out of the same accidental injury." He alleged that when he filed the damage suit he had been informed that neither Aaberg nor Passmore carried workmen's compensation insurance; that after he filed it he was told by a representative of Hartford that it would defend the suit on the ground that Christensen's accident was covered by the Workmen's Compensation law, hence could not be the subject of an action for damages; that this created a dilemma, to solve which he had to file a claim with the Industrial Accident Board, which rendered him an award but later set it aside on the ground that in filing his damage suit he had made an election; that the law does not require him to elect as between his two causes but it is for the courts to decide under which he may recover; that if the causes are consolidated he will replead and allege them alternately, thus making it possible for one judgment to dispose of the entire controversy.

The trial court consolidated the causes but adjudged that the trial of all issues in both at the same time before a jury would prejudice the defendants; that the allegation in the compensation suit that Aaberg had insurance covering all his employees, including Christensen, is "controlling and exclusive"; and that whether Aaberg's policy covered Christensen's employment is a question of law for the court, which was accordingly set for special hearing in advance of the issues in the damage suit.

That hearing was had and the court found that Aaberg's policy with Hartford "covers" Christensen. To that finding both Hartford and Christensen excepted. Later the court "clarified" this order by stating that it was not intended to be a finding upon any question of fact, but was "solely a determination overruling the contention that as a matter of law" the policy did not cover Christensen. Both Christensen and Hartford again excepted.

The testimony at this hearing is before us in a "Statement of Facts in Hearing on Coverage." Aaberg testified, describing his business and the nature of Christensen's employment. He said he was a farm equipment dealer; that his business was the sale of new farm tractors and trucks and repair parts and the operation of a welding shop; that he had places of business at both Angleton and Alvin; that at the time of Christensen's injury the Alvin business consisted of "a parts house in the downtown part of Alvin" and a welding shop a quarter of a mile "out on the highway"; that he opened the welding shop at Alvin in

the fall of 1945 and put Passmore, who had been working in the Angleton shop, in charge of it as "foreman of the work", "to run it"; that Passmore got half the labor charge on each job done in the Alvin shop and was paid his part even on credit jobs, Aaberg taking the entire loss on accounts not paid; that he knew nothing about the hiring of Christensen until after the latter had gone to work and knew nothing about how he was paid or how much, as that was a matter "between Mr. Passmore and Mr. Christensen",; that "I considered Mr. Passmore as an independent contractor"; that he did not intend that Passmore's work in the welding shop should be included in his insurance policy; that he did not intend to carry insurance on either Passmore or Christensen or anybody hired by Passmore and working under him; that when he had endorsements added to his policy he did not intend them to cover the Alvin welding shop; that he did not pay any premiums on anybody working in that shop; that the premiums he did pay were based on his pay rolls and Christensen was never on those rolls; that he never paid any Social Security taxes on Christensen.

Thereafter the consolidated causes were set for trial. Hartford filed a trial amendment, alleging that Christensen was not an employee of Aaberg when injured but was an employee of Passmore, an independent contractor, and, alternatively, that he was an employee of Aaberg and Passmore either as partners or as joint enterprises. As a further alternative it alleged that if Christensen was an employee of Aaberg then the Alvin welding shop was being conducted by Aaberg as a business separate and distinct from his other enterprises, hence was not covered by Aaberg's policy. Aaberg answered that it was his intention to cover all of his employees with workmen's compensation insurance; that, therefore, if Christensen was found to be his employee, he was covered by the policy.

On a jury finding that Christensen was an employee of Aaberg and in the course of his employment when his eye was injured, the trial court rendered judgment that Christensen take nothing as against Aaberg but awarded him judgment against Hartford for the maximum compensation. That judgment was affirmed by the Court of Civil Appeals. 223 S. W. 2d 45. Both Hartford and Christensen sought a writ of error complaining of the holding by the Court of Civil Appeals that Aaberg's policy covered Christensen. Hartford's application was granted on that point, which is that the Court of Civil Appeals erred in holding that Aaberg "is entitled to assert that the policy coverage extended beyond the intention of the contracting parties (petitioner Hartford and respondent Aaberg), since the

doctrine of extension of the policy beyond the contracting parties' intention to all employees of a general single business, is available only to the employee, and in this case is not asserted by the employee." Christensen's application was granted because of the granting of Hartford's.

At the trial Aaberg's testimony was less positive as to Christensen's employment status at the time of injury. He was, of course, asked about his testimony at the "hearing on coverage" as above outlined, and readily admitted it, but said that even then he was in doubt as to Christensen's status; and when asked whether he then "had some honest, sincere doubt about what the relation was between Mr. Christensen and you and Mr. Passmore and you," he replied: "I hadn't given it but very little thought up until the time of the accident, and then when Mr. Christensen and Combs and Dixie sued Mr. Passmore and myself, why I began to investigate the law in the deal; and no doubt I have erred in not considering them as an employee at that time and paying a premium on their wages." Asked if, prior to the time the damage suit was filed and "for all purposes in connection with your insurance", he had considered that both Passmore and Christensen were not · his employees, he answered, "Yes. I really didn't consider them as being on my payroll. They were my employees but they were not on my payroll, being as Mr. Passmore had this method of compensation coming to him." He said that if he had considered them his employees he would have paid compensation insurance premiums on them. (In answer to Hartford's application for writ of error Aaberg says: "The jury found that Christensen was an employee of Aaberg. Prior to this jury finding Aaberg and Passmore erroneously thought that Christensen was an employee of Passmore only, and that Passmore in the operation of the welding shop at Alvin was an independent contractor. However, such was an honest belief as testified to by Aaberg, and this is the only reason why Christensen was not carried on the pay rolls, reported on, and insurance premiums paid on him by Aaberg.")

The court excluded all the testimony which had been admitted at the hearing on coverage as to Aaberg's intent with respect to whether the insurance policy should cover Christensen. We think, however, that the intent of the parties can be determined by reference to the terms of the policy itself, considered in connection with Aaberg's testimony as to the hiring of Passmore and Christensen. In its general provisions the policy was the usual form. The employer named was Q. J. Aaberg doing business as Aaberg Truck & Tractor Co., with post office

address at Angleton. The policy was to run for one year from January 20, 1946. "Locations of all factories, shops, yards, buildings, premises or other work places of this Employer" were stated as "Angleton and elsewhere in the State of Texas," which was followed by this declaration: "All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above *as declared* in each instance by a *disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this Employer.*" (Italics ours.) Operations classified and the total annual remuneration estimated thereunder were these: "(a) Automobile Sales and Service Agencies", $3,000.00; "(b) All other employees——including accessory or spare part salesmen; Chauffeurs and their helpers", $3,000.00; (c) Farm Machinery Dealers—all operations—including demonstration; Drivers, Chauffeurs and their helpers", $1,000.00 Then the policy recited: "The foregoing enumerations and description of employees include all persons employed in the service of this Employer in connection with the business operations described to whom remuneration of any nature in consideration of service is paid, allowed or due, together with an estimate for the Policy Period of all such remuneration." Thus it appears that the estimated annual remuneration in Aaberg's declaration of business operations covered did not include the earnings of Christensen or anyone else in the welding shop at Alvin. And that Aaberg did not intend that it should cover workers there is clearly shown by his testimony in the hearing on coverage that when he reported on his pay rolls, as required by his policy, he pail no premium on any moneys paid to Passmore and no premium on any wages received by Christensen or "anybody working in the welding shop"; and it is established also by his testimony that he made no withholding for income tax or social security payments on Christensen, as to whom he said, "I don't know anything about Christensen."

In the face of these policy provisions and Aaberg's attitude with respect to them as reflected in his own frank testimony, can he now defeat Christensen's common-law action for damages on the plea that Christensen was covered by the compensation insurance policy?

■ While our public policy encourages compensation insurance to protect industrial employees, the requirment is not absolute; that is, it is not compulsory that the right of every worker to redress for injuries be determined by the provisions of our Workmen's Compensation law. In fact, its validity has been upheld "on the theory that when the employer becomes a sub-

scriber and the employee accepts employment from such subscribing employer, both the employer and employee have voluntarily agreed that certain rights and remedies existing under the common law should not be operative as between them, but, instead, the provisions of the Workmen's Compensation Law should govern their dealings. (citing authorities.) This is but another way of saying that the provisions of the Workmen's Compensation law become a part of the contract of employment. The law and the acts of the parties in accepting its provisions and acting under its terms create a contractual relation between the employer and employee." Anderson-Berney Realty Co. v. Soria, 123 Texas, 100, 67 S. W. 2d, 222. The Legislature recognized this when, in 1917, it amended the original law (Acts 1913, Reg. Ses., Chap. 179, p. 429 et seq.) to provide that an "employee of a subscriber shall be held to have waived his right of action at common law or under any statute of this state to recover damages for injuries sustained in the course of his employment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed said right or if the contract of hire was made before the employer became a subscriber, if the employee shall not have given the said notice within five (5) days of notice of such subscription." Acts 1917, Reg. Ses., Chap. 103, p. 270, Sec. 3a, Vern. Anno. Civ. Stat., Art. 8306, Sec. 3a.

■ And that an employer is not compelled at all events to carry compensation insurance on his employees has been repeatedly recognized by our decisions. For example, where the employer has two different kinds of business involving different risks, pay rolls and premiums, he may insure those engaged in one business and leave those in the other uninsured; and where the employee in such situation sues for workmen's compensation benefits his rights are determined by the specific terms of the policy. Mulkey et al. v. Traders & General Ins. Co. (Civ. App.), 93 S. W. 2d 582 (er. ref.), citing numerous authorities.

■ While we have found no case deciding the precise question at bar and have not been cited to any, we have concluded that Aaberg did not contract with Hartford to pay workmen's compensation on Christensen. His policy carried no provision relating to the welding shop at Alvin; the estimate of annual remuneration paid in the policy's declaration of business operation covered by it did not include the earnings of Christensen or anybody else working in that shop; he withheld nothing to cover Christensen's income tax liability, he made no social security payments for Christensen's benefit. In that situation we see no good reason why he should be permitted to defeat Chris-

tensen's election to resort to a common-law action for damages by insisting that Christensen was covered by Hartford's policy. He cannot complain at being left where he chose to place himself by his policy contract. And in so holding we are expressly not passing on what Christensen's right would be had he elected to stand on the policy.

It follows that the judgments below are reversed, and judgment in the compensation suit is rendered in favor of petitioner, Hartford Accident and Indemnity Company. Petitioner Christensen's common-law action for damages is remanded to the trial court.

Opinion delivered February 15, 1950.

Rehearing overruled April 12, 1950.