32 N.J. Super. 310 (1954)
108 A.2d 293
JOHN F. GERARD, PLAINTIFF-RESPONDENT,
v.
AMERICAN CAN COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1954.
Decided October 6, 1954.
*311 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Fred Feinberg argued the cause for the respondent (Mr. Jack Geddy Goldberg, attorney).
Mr. Milton A. Dauber argued the cause for the appellant (Messrs. Carpenter, Gilmour & Dwyer, attorneys; Mr. Carl S. Kuebler, of counsel).
The opinion of the court was delivered by FRANCIS, J.A.D.
Both the Division of Workmen's Compensation and the County Court found that respondent on this appeal was entitled to compensation because he suffered injuries arising out of a work connected assault and battery.
The employer and a labor union had entered into a collective bargaining agreement relating to working conditions in the plant. Among other things, it was agreed that employee grievances were to be processed according to certain procedural steps therein outlined.
Gerard was employed on a machine in the production department, and in addition he was the union shop steward in the department. In this capacity he policed the bargaining agreement in his department, watched for violations of *312 its conditions, and received and processed grievances of other production employees. Under the contract, shop stewards were allowed four hours a week off with pay for the handling of grievances. He testified that in practice part of his obligation was to listen to complaints of employees and endeavor to maintain harmonious relations between them and the employer. According to the personnel manager, Gerard could leave his machine during working hours in order to discuss with him the work of the production men; the door was "always open." In this connection, we note that the contract provided:
"The parties intend that agreement upon and application of the terms and conditions set forth * * * shall promote and maintain effective and harmonious industrial relationships between the company and its employees."
Manifestly, when Gerard was investigating or processing a grievance or engaged in a matter reasonably incident to or arising out of a grievance, he was engaged in the course and scope of his employment. In doing so he was furthering the contractual interests and stipulations of both employer and union.
One Frank Miller was a machine maintenance man in the plant; Gerard was not his steward. The duty of the maintenance men apparently was to keep the production machines in working order. When the machines were being repaired, the production men were usually sent to another line, but if not, they were unable to work and were, for the duration of the repairs, off the payroll. Naturally, therefore, they were anxious to have the machines resume operation as quickly as possible.
Shortly before the incident occurred out of which this action arose, a production worker complained to Gerard that the production line was running without proper employees; that mechanical employees were running it in violation of the contract. The complaint had its origin in some repair work that Miller and some fellow workers had to do on the production line. Specifically, the charge seems to have been *313 that the maintenance men had taken too long for the repairs and that they were in fact running production, contrary to the contractual stipulation that skilled men should not perform work out of their job assignments.
Gerard, in pursuit of his duty, undertook to process the grievance with the employer's representatives. In addition he filed the complaint with the union. Before the matter had been adjusted under the contract grievance machinery, the union sent a notice to Miller that it would hold a hearing as to whether he had violated the company-union contract.
The hearing was scheduled for an inconvenient time for Miller and in addition involved a 60-mile trip for him. At the time he was working a night shift, from 12:45 A.M. to 7:45 A.M. On returning to work after receiving the union notice, he visited Gerard, who was working on the production line and was unable to talk with him. However, as soon as relief could be obtained, Gerard went to Miller's department. Miller wanted to know what the point of the union letter was, and he told Gerard that it was going to cause dissension in the department, because if he could not fix the machines properly he would "have to turn the crews in." According to Miller, he then undertook to explain about production on the machine and he asked Gerard if he realized that "these machines are supposed to knock out 75 bags an hour?" He asked what he was supposed to do; he said he had duties to perform when the line became bad, certain production quotas had to be met, and the line ran poorly in the summertime.
Gerard said Miller became excited and suddenly punched him in the jaw, breaking it. Miller admitted the striking, but said he lost his head when Gerard called him foul and obscene names. Gerard denied the name calling.
The basic rule for determining the right to compensation for injuries arising from assault is that such injuries are compensable if they ensue from a risk which is reasonably incidental to the employment. The injuries need not have been foreseen or expected so long as they were a rational consequence from a risk connected with the employment. *314 Grant v. Grant Casket Co., 137 N.J.L. 463, 466, 467 (Sup. Ct. 1948), affirmed 2 N.J. 15 (1949); Sanders v. Jarka Corp., 1 N.J. 36 (1948).
In the present case, in our judgment the assault and resulting injuries arose from a risk which was incidental to the employment. While the duties of the steward are not detailed in the bargaining contract, it is plain that both company and union recognized that he was the person to whom the employees would bring grievances and charges of contract violation and that it was his duty to process them. Gerard had set in motion the grievance procedure provided by the contract. His additional notice to the union officials permitted the union to make its own investigation of the alleged violation. It is inferable that by its own inquiry the union could reach a determination as to whether the matter was of sufficient importance to warrant pursuing it beyond the preliminary steps set out in the contract and into the more formal arbitration, if adjustment was not made.
In any event, the conversation between Miller and Gerard which immediately preceded the assault was not limited to the impending union hearing. It covered the whole field and nature of the complaint, as well as Miller's explanation of his course of conduct on the production line, his denial that he was in fact "running" the production line in violation of the contract, and his denial of interference with the timely return of the regular workers on that line.
The whole matter was intimately associated with the processing of a grievance. The matter of the union hearing merely provided the occasion not only for the expression of disgruntlement at the inconvenience of the hearing but, so far as the record shows, for the first explanation Miller made of the complaint. The character of the assault cannot be changed from one of employment connection to one emanating entirely from a private feud simply because one phase of the investigation of the alleged contract violation involved a union activity outside of the plant and provided *315 the impetus for the discussion of the matter during working hours by Gerard.
Appellant contends that even if the assault bore the necessary connection with the employment, compensation should be denied because Gerard was the aggressor. It is not suggested that he was the aggressor in the physical sense. The sole basis for the argument is that his vile language cast him into that category.
Here a distinction must be made between provocation and aggression. Mere words, no matter how opprobrious, are never an excuse for an assault and battery. And certainly inflammatory words used as an incident of a work originated and work connected assault cannot transform the victim into an aggressor. Sanders v. Jarka Corp., 1 N.J. 36 (1948); 1 Larson, Law of Workmen's Compensation, § 11:15(c) (1952).
The judgment is affirmed.