Richard A. LAMAR, Appellant,

v.

FORD MOTOR COMPANY and Harlow O. Coffield, Respondents.

No. 51878.

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1966.

Don M. Jackson, and John B. Moritz, Kansas City, for appellant. Jackson, Wade & Barker, Kansas City, of counsel.

John M. Kilroy, John R. Caslavka, Kansas City, for respondents. Shughart, Thomson & Kilroy, Kansas City, of counsel.

WELBORN, Commissioner.

Action for $100,000 actual, and $100,000 punitive, damages for assault and battery. Trial court dismissed petition on motions of defendants. Plaintiff appeals.

In his petition plaintiff described himself as chairman of the union bargaining committee at the defendant Ford Motor Company's plant in Claycomo. Defendant Harlow O. Coffield is described as a general foreman of Ford. The petition alleged that plaintiff devoted full time to performing, on behalf of the members of the union, his duties as chairman of the bargaining committee. The petition charges that, on August 31, 1963, defendants, acting through Harlow, assaulted and beat plaintiff, inflicting severe injuries.

Defendant Coffield filed a combined motion to dismiss and general denial. The motion to dismiss charged that the matters upon which the petition was based were "within the exclusive jurisdiction of the Workmen's Compensation Law * * *."

Defendant Ford filed a separate motion to dismiss, alleging that the cause of action was based upon an incident at Ford's plant; that at the time and place in question both plaintiff and Ford were subject to the Workmen's Compensation Law of the State of Missouri; that the Workmen's Compensation Law provides the sole remedy of plaintiff, and, therefore, the court had no jurisdiction over the alleged cause of action. Ford attached to its motion as an exhibit a copy of a letter from the Division of Workmen's Compensation, showing that, although plaintiff had previously rejected the Workmen's Compensation Law, he had subsequently withdrawn his rejection.

Plaintiff filed "Opposition to Defendant's, Ford Motor Company's, Separate Motion to Dismiss," a combination memorandum of argument and authorities and a denial of the allegations of Ford's motion. The document stated that Ford's motion attempted to controvert the allegations of plaintiff's petition, designed to show that he devoted his full time to representation of the union members. It argued that a motion to dismiss on grounds not appearing on the face of plaintiff's petition would lie only when the factual basis of such grounds was not controverted and that Ford's defense of the Workmen's Compensation Law coverage could be raised only by answer, "thereby making an issue of fact for the jury, * * *." The document denied the allegations of Ford's motion and prayed that the motion be overruled.

Plaintiff also moved to strike from defendant Coffield's motion and answer the portion thereof relying on the Workmen's Compensation Law, charging that Coffield was not entitled to the protection of that law.

Subsequently Ford filed, in support of its motion, an affidavit of its attorney setting out portions of its collective bargaining agreement. The portions set out include the recitation of the general intent of the agreement of "attaining peaceful, orderly relations and efficient, uninterrupted operations * * *;" and the general responsibility of Ford in the management of the plant operation, including the right to "hire, lay off, assign, transfer and promote employees, and to determine the starting and quitting time and the number of hours to be worked; * * *." Also set out was a provision giving the company "the sole right to discipline and discharge employees for cause, * * *." Included were provisions giving the employees "representatives on Company time * * *." Representatives are required to be "in the regular employ of the Company, or on approved leave of absence, for at least one year immediately preceding his designation to such position * * *." The agreement refers to "Both Full- and Part-Time Representatives." Without expressly acknowledging that plaintiff was a full-time representative, the affidavit apparently concedes such to be the case, inasmuch as it sets forth provisions for hours on company time and compensation of full-time representatives. The agreement provides that representatives shall "be on Company time

only for the same number of hours as the employees in such Unit are normally scheduled to work * * *." A full-time representative is to be paid at the rate he was receiving at the time of assuming his duties. "He shall be deemed to be an active employee of the Company for the purpose of applying the vacation plan."

The affidavit alleged that plaintiff had a job classification entitling him to be paid at the rate of $2.79 per hour while working as a union committeeman; that he was paid at that rate for the period of time which included the date of the occurrence mentioned in plaintiff's petition. The affidavit set out that plaintiff had filed two workmen's compensation claims for injuries received while employed by defendant Ford and before he became a union committeeman.

The affidavit alleged that plaintiff "was subject to the discipline of the Ford Motor Company and bound to abide by its rules and regulations and under such aspects of control of (Ford) as its employee as are shown by the above set out provisions of said Union Agreement and to the extent to which (Ford) reserved and set out its management rights as employer under the terms and provisions of said Trade Union Agreement."

Subsequently, on March 4, 1965, plaintiff filed an application for disqualification of Judge Rooney and a counteraffidavit to the affidavit in support of Ford's motion to dismiss.

The counteraffidavit, by plaintiff's attorney, recited that plaintiff was a full-time representative of the union and was not under direction or control of defendant Ford; that plaintiff was the sole judge of the hours he would be present on Ford's premises, acted solely for members of the union, took no orders from Ford; that plaintiff had the right to be present in the plant at any time of day or night when any member of the union was working; that Ford had no right to compel plaintiff to perform any work of any kind for it; that plaintiff was the sole judge of his hours of

work and was accountable only to the union; that Ford did not have authority to discharge plaintiff while chairman of the union bargaining committee and that plaintiff could be removed from that office only by vote of the membership of the union; that his duties while on defendant Ford's premises consisted of going from department to department conferring with other union representatives enforcing the terms of the contract on behalf of the union and its members; that plaintiff was subject to removal from office by the union should he be or become subject to the influence of Ford; that, while the union agreement required that he be paid by Ford, he was considered an employee under the agreement only for vacation plan purposes; that the provision for payment of union representatives by Ford had been obtained as the result of an extended strike and extended negotiations; that Ford had no right of control, supervision, appointment, designation or selection of the chairman of the bargaining committee; that the injuries received by plaintiff did not arise out of Ford's business of manufacturing automobiles, but resulted from an assault committed upon plaintiff, while plaintiff was acting on behalf of the union.

On March 4, 1965, Judge Rooney entered an order sustaining defendants' motions to dismiss. On March 12, plaintiff filed a motion to set aside the order of dismissal and for reconsideration of the motions to dismiss. Among the grounds stated was that Judge Rooney had no jurisdiction to enter the order of dismissal in view of the pending motion for his disqualification.

On April 2, 1965, the parties filed a stipulation for a change of venue to the Platte County Circuit Court. The stipulation was approved and the cause ordered transferred.

On June 18, 1965, the judge of the Platte County Circuit Court heard arguments on plaintiff's motion to set aside the dismissal. On June 25, the affidavit of plaintiff was filed in the Platte County Circuit Court,

in support of his motion for reconsideration of the order of dismissal.

Plaintiff's affidavit set forth that he was sole Chairman of the Unit Committee for the entire union membership at the Ford plant; that as such he had the right to enter and leave the Ford premises twenty-four hours per day; that he devoted full time to union affairs and was not required to perform any duties for Ford while serving as chairman; that he had no obligation to report and did not report his activities or his presence on, or his leaving, the Ford premises to anyone connected with Ford. It stated that plaintiff would leave the Ford plant and the Kansas City area on union business for extended periods of time; that during such absences he designated an acting Chairman of the Unit Committee and merely notified Ford of his choice. It further stated that, pursuant to an umpire's ruling, he was required only to "ring in" on any day he came on the Ford premises in order to be entitled to compensation from Ford. The affidavit set forth the circumstances of the incident out of which his claim arose, alleging that at the time he was on the Ford premises he was acting as full-time Chairman of the Unit Committee and that the assault by Coffield arose out of a discussion between plaintiff and Coffield of a union member's grievance.

Subsequently, a supplemental affidavit by Ford's attorney was filed, setting forth the terms of the collective bargaining agreement concerning the first stage grievance procedure. The procedure authorized the aggrieved employee either to take up the matter directly with his foreman or with the district committeeman who shall discuss the matter with the foreman. Plaintiff's affidavit alleged that in the discussion with Coffield which produced the assault, he was, as authorized, acting in lieu of an absent district committeeman.

Ultimately, the judge of the Platte County Circuit Court concluded that the motion pending before him was a motion for rehearing which, under Civil Rule 78.04, V.A.M.R., was considered overruled ninety days after having been filed on March 12, and that he had no authority to act on the motion after the expiration of that time. This appeal, pursuant to special order, followed.

Plaintiff contends here that his petition did not show that he was a Ford employee and that such issue could not be resolved on the basis of uncontroverted facts and, therefore, the trial court improperly sustained Ford's motion to dismiss. Ford's position is that applicability of the Workmen's Compensation Law is among the "other matters" which, under Civil Rule 55.31, V.A.M.R., may be raised by motion to dismiss, the grounds for which may be supplied by affidavit under Rule 55.31(b). Ford contends that its affidavit and affidavits filed on behalf of plaintiff provided "a complete and adequate record of the essential testimony that could be elicited on trial to show the occurrence and injury arose out of and in the course of employment of appellant, leaving nothing to be controverted, and * * * that by reason of the union contract provisions the activity of appellant at the time necessarily promoted harmonious relations of employer and its employees * * *, leaving no doubt that appellant was the employee of * * * Ford Motor Company and that the occurrence arose out of and in the course of his employment."

This court held, in Roberts v. Epicure Foods Company, 330 S.W.2d 837, that the defense of applicability of the Workmen's Compensation Law could not be properly raised by a motion to dismiss under § 509.-290, RSMo 1949, the statutory predecessor of Civil Rule 55.31. Ford contends that the decision in Roberts was based upon the inadequacy of the record for determination, upon motion to dismiss, of the defense raised. Here, according to Ford, the court had before it all of the matters' which might have been presented at an evidentiary hearing and, therefore, the matter was properly determined on the motion to dismiss.

■ Without attempting to decide whether or not an issue such as that here

involved might be "capable of unassailable proof on motion" (see Committee Note and Comment to Civil Rule 55.31, 2 V.A.M.R., pp. 170–171), we are of the opinion that no such proof favorable to Ford of the issue is here presented. In support of the trial court's ruling, Ford largely ignores the counteraffidavits on behalf of plaintiff except insofar as Ford considers them to support its position. Plaintiff's counteraffidavits raise a serious question as to the nature and extent of Ford's control or right of control over his activities. Our cases have recognized the control factor as important in ruling the existence of an employer-employee relationship under the Workmen's Compensation Law. Coy et al. v. Sears, Roebuck & Co., 363 Mo. 810, 253 S.W.2d 816, 818(1); McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149, 156(5–7); Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 912(2–6).

■ Plaintiff's counteraffidavits reveal, at least, that plaintiff's status may not be determined solely on the basis of the facts that he had to be an employee to be selected as a union representative, that the occurrence took place on Ford's premises, that it took place during working hours, that plaintiff was performing duties required in his union capacity, that he was paid by Ford, that his pay was determined by the scale of the employees in his Unit, that Ford was under the Workmen's Compensation Law, that plaintiff had rescinded a prior rejection of that law, and that under the union contract he was considered an "actual employee" of Ford for the purpose of the vacation plan, these being the facts which Ford relies upon in support of the trial court's action. In other words, this is not "an action groundless on the uncontroverted facts" but it involves a real controversy of a vital fact issue concerning the merits of plaintiff's claim. Therefore, it was not subject to be dismissed on the grounds asserted in Ford's motion. Metcalf v. American Surety Co. of New York, 360 Mo. 1043, 232 S.W.2d 526, 530 [4, 5]; Pogue v. Smallen, Mo.Sup., 285 S.W.2d 915, 917 [2]; Mc-

Laughlin v. Neiger, Mo.App., 286 S.W.2d 380, 384–385 [6], [7]; Roberts v. Epicure Foods Company, supra; Burke v. City of St. Louis, Mo.Sup., 349 S.W.2d 930, 932 [4].

Ford relies strongly upon the authority of Gerard v. American Can Company, 32 N.J.Super. 310, 108 A.2d 293, and Kennedy v. Thompson Lumber Co., 223 Minn. 277, 26 N.W.2d 459. Those cases involved claims for workmen's compensation by union shop stewards. In both cases, the claimant sought compensation for injuries sustained in the performance of his duties as a union steward. The employer resisted the claim, not on the basis that the steward was not its employee, but on the basis that the claim did not arise out of service to the employer. In both cases, the employer's defense was rejected. However, in both cases, the employee involved was only a part-time union representative, with regular duties to perform in the operation of the employer's business. Gerard was a machine operator who left his machine on the production line to investigate a union member's grievance. Kennedy was a ripsaw operator who was injured when he left his employer's premises in order to make a telephone call in an effort to avoid a strike. In Kennedy, the court stated: "We recognize that a shop steward is primarily a representative of the union. We do not intend to establish any precedent which will be used in support of the claim that all injuries suffered by shop stewards while acting as such are compensable." 26 N.W.2d 463. The issue presented in those cases differs from that here and we find the decisions inapplicable to the situation in this case.

Ford also suggests that its motion asserting the applicability of the Workmen's Compensation Act deprived the circuit court of jurisdiction to hear the matter further and caused the issue to become one for determination under the administrative procedure of the Workmen's Compensation Law. In support of this position, Ford relies upon Sheen v. DiBella, 395 S.W.2d 296, a 1965 decision of the Kansas City Court of Appeals. We do not consider

that case authoritative in this situation. Sheen involved the effect, in proceedings before the Industrial Commission, of a prior judicial determination, in a common law action, that "the plaintiff * * * and the defendant * * * were under the Missouri Workmen's Compensation Law * *." That determination was made after a hearing on the issue, raised by defendant's answer, and plaintiff's action for damages was dismissed. Subsequent proceedings before the Industrial Commission resulted in the conclusion that plaintiff was a volunteer at the time of his injury, not an employee. On appeal from the Industrial Commission finding, claimant asserted that the judicial determination was res judicata of the issue of coverage of the Workmen's Compensation Law. The Kansas City Court of Appeals denied the res judicata argument. The court employed some language indicating that once a factual issue of applicability of the Workmen's Compensation Law was raised in the common law action, the circuit court was deprived of jurisdiction to proceed further "until such fact questions were decided by the Commission, which body had exclusive original jurisdiction thereof; * * *." 395 S.W.2d 304.

This language would apply the doctrine of "Primary Jurisdiction" in common law actions where the defense of application of the Workmen's Compensation Act was raised. In the large number of reported cases in which our appellate courts have considered, in common law actions, the defense of application of the Compensation Law, we find none, prior to Sheen, in which the possibility of application of the primary jurisdiction doctrine was raised. See Roberts v. Epicure Foods Company, supra; Wooten v. Youthcraft Manufacturing Company, Mo.Sup., 312 S.W.2d 1; Daniels v. Krey Packing Company, Mo.Sup., 346 S.W.2d 78; Musielak v. International Shoe Company, Mo.App., 387 S.W.2d 217; Anderson v. Benson Manufacturing Company, Mo. Sup., 338 S.W.2d 812; Warren v. American Car & Foundry Co., 327 Mo. 755, 38 S.W.2d 718; Simmons v. Kansas City Jockey Club,

334 Mo. 99, 66 S.W.2d 119; McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149; Metzinger v. H. A. Dailey, Inc., 358 Mo. 689, 216 S.W.2d 480; McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629.

In Bean v. Piedmont Interstate Fair Association, 4th Cir., 222 F.2d 227, the defense of coverage of the Workmen's Compensation Law was raised, along with the contention of exclusive jurisdiction of the Workmen's Compensation Commission to determine the issue. In passing on this contention, the court stated (222 F.2d 234):

"* * * The statute does not require, as a preliminary to the action at law, a finding by the Commission as to the refusal or neglect of the employer to comply, and no case has been found, notwithstanding diligent search of experienced counsel, in which the question has arisen under the corresponding provisions of the Workmen's Compensation statutes of other states. In our opinion it is unreasonable to suppose that the legislature intended to favor the defaulting employer and to impede the injured employee by subjecting him to the delay and expenses incident to a preliminary inquiry by the Commission, particularly as the question of non-compliance either by refusal or neglect is one of fact easily within the competence of a common law court.

"Numerous cases have upheld the right of an injured employee to maintain a suit at common law against an employer who has failed to obtain insurance as required by the Workmen's Compensation laws. See Buhler v. Maddison, 109 Utah 267, 176 P.2d 118, 168 A.L.R. 177; Neff v. Baiotto Coal Co., 361 Mo. 304, 234 S.W.2d 578; Jones v. Brink, Fla., 39 So.2d 791; Nantico v. Matuszak, 322 Mich. 644, 34 N.W.2d 506; Hartford Acc. & Indmn. Co. v. Christensen, 149 Tex. 79, 228 S.W.2d 135; Larson, Workmen's Compensation Law, §§ 67.21, 92.10. The question now under consideration was not raised in these cases and this uniform treatment of the problem is significant. In the last mentioned case the main point for decision by the Texas court was whether or not the employee was cov-

ered under a policy the employer had with the insurer. The court held that the employee was not covered and that he could proceed against his employer as at common law; and there was no suggestion that the court was not competent to determine the question of coverage in the first instance."

The most closely analogous situation in which we have found the doctrine applied was in Somma v. United States, 3rd Cir., 283 F.2d 149. There a federal employee sued for personal injuries under the Federal Tort Claims Act. The defense was interposed that plaintiff's exclusive remedy was under the Federal Employees' Compensation Act. Applying the doctrine of primary jurisdiction, the court ordered the tort action stayed until the plaintiff had pursued his remedies under the Federal Employees' Compensation Act.

The scope and effect of the primary jurisdiction doctrine have been described as follows:

" * * * Where a claim is originally cognizable in the courts and the enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative agency, the judicial process is suspended pending referral of such issues to the administrative agency for its views. Under the primary jurisdiction doctrine the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal (1) where the question demands the exercise of administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal; (2) to determine technical and intricate matters of fact; and (3) where a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered." 2 Am.Jur.2d, Administrative Law, § 788, p. 689.

The doctrine had its origin in cases involving the reasonableness of railroad rates and charges. In Texas and Pacific Railway Company v. Abilene Cotton Oil Company, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, generally considered the case in which the doctrine originated, the court held that a shipper who sued at common law to recover amounts paid in excess of what it claimed were reasonable rates was required to seek redress originally before the Interstate Commerce Commission. The court stated:

" * * * [I]f, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. Indeed, the recognition of such a right is wholly inconsistent with the administrative power conferred upon the Commission, and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed. Equally obvious is it that the existence of such a power in the courts, independent of prior action by the Commission, would lead to favoritism, to the enforcement of one rate in one jurisdiction and a different one in another, would destroy the prohibitions against preferences and discrimination, and afford, moreover, a ready means by which, through collusive proceedings, the wrongs which the statute was intended to remedy could be successfully inflicted." 204 U.S. 440–441, 27 S.Ct. 355.

The doctrine has been widely applied by the federal courts and has been accepted by the state courts (see 3 Davis, Administrative Law Treatise, § 19.01 et seq., p. 1). The appellate courts of this state have had occasion to apply the doctrine principally in matters involving the Public Service Commission Act. In State ex inf. Shartel

ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 401 [15], 89 A.L.R. 607, the court suggested that the question of public necessity for the continuation of electrical service was "a matter peculiarly within the jurisdiction of the Public Service Commission," and, therefore, was not for consideration in an action to oust utility. In State ex rel. and to Use of Cirese v. Ridge, 345 Mo. 1096, 138 S.W. 2d 1012, the court held that exclusive primary jurisdiction lay with the Public Service Commission of a utility's complaint that an electrical company was operating without a certificate of convenience and necessity and that the court had no jurisdiction of a suit by the utility to enjoin such operation. See also State ex rel. Taylor v. Nangle, 360 Mo. 122, 227 S.W.2d 655; State ex inf. Barker v. Kansas City Gas Co., 254 Mo. 515, 163 S.W. 854; State ex rel. and to Use of Kansas City Power & Light Co. v. Buzard, 350 Mo. 763, 168 S.W.2d 1044.

■ Those cases, although based to a large extent upon the statutes relating to the powers of the Public Service Commission, reflect the type of situation to which the primary jurisdiction doctrine is properly applicable. Involved are questions of administrative expertise, technical factual situations and regulatory systems in which uniformity of administration is essential.

The question presented in this case is of a different nature. No element of administrative agency expertise is involved. Long before the Workmen's Compensation Act, the courts were determining whether or not an employer-employee relationship existed and they continue to do so in many situations, involving the application of principles determinative of the issue here presented. Furthermore, the Workmen's Compensation Act is not a regulatory measure in which discretionary authority has been conferred upon the administrative body. The discretionary nature of the authority of the Interstate Commerce Commission and the Public Service Commission is such that judicial restraint is necessary if uniform administration is to result.

■ Although in Texas and Pacific Railway Company v. Abilene Cotton Oil Company, supra, the court did ignore a statutory provision for continuation of existing remedies, we do not find such absolute inconsistency (see T. I. M. E. Inc. v. United States, 359 U.S. 464, 473, 79 S.Ct. 904, 3 L.Ed.2d 952) between the grant of authority to the Industrial Commission and the continued exercise by the courts of jurisdiction over common law actions as would require us to ignore the rather clearly expressed legislative intention that the administrative procedure is not intended to be exclusive whenever the possibilty of application of the act is suggested. Such intention may be found in § 287.440, RSMo 1959, V.A.M.S., fixing the time at which the period of limitation of a claim for compensation begins to run "where recovery is denied to any person in a suit brought at law or in admiralty to recover damages in respect of bodily injury or death on the ground that such person was an employee and the defendant was an employer subject to and within the meaning of this chapter, * *."

■ We conclude that defendant's motion did not call for the application of the primary jurisdiction doctrine and that the circuit court has jurisdiction to determne, upon proper presentation of the issue, whether plaintiff was an employee of defendant Ford.

■ As for defendant Coffield, his motion was based upon the applicability of the Workmen's Compensation Act. Our conclusion as to that contention of defendant Ford would rule Coffield's motion. However, Coffield, in any event, was not entitled to rely upon the defense of applicability of the Workmen's Compensation Law. He does not deny the allegation of the petition that he was a foreman of Ford. Even if plaintiff was a Ford employee, Coffield, as a fellow employee, would not be able to rely upon the applicability of the act to plaintiff's claim against Ford as a defense to plaintiff's claim against him. Gardner v. Stout et al., 342 Mo. 1206, 119 S.W.2d 790,

792 [3]; Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, 917 [6]; Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497, 502 [8, 9].

In view of our conclusion regarding the ruling on defendants' motions and in view of the change of venue by stipulation of the parties, we do not reach the question of the effect of the motion for his disqualification upon the authority of Judge Rooney to rule the motions.

The judgment is reversed and the cause remanded with directions to overrule defendants' motions to dismiss and to reinstate plaintiff's petition.

HOUSER, and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.