136 N.J. Super. 172 (1975)
345 A.2d 342
PASQUALE SALIERNO, PETITIONER-RESPONDENT,
v.
MICRO STAMPING CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1975.
Decided September 19, 1975.
*173 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. George J. Kenny argued the cause for appellant (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Herman M. Wilson argued the cause for respondent.
The opinion of the court was delivered by LARNER, J.A.D.
This is an appeal from a judgment of the Workmen's Compensation Division granting petitioner *174 an award which included compensation for total permanent disability.
Petitioner was a power press operator and die setter in respondent's manufacturing plant. In addition, he was the shop steward for the union which was the bargaining agent for the employees in the plant. On April 13, 1971, after a full day of work, he engaged in a negotiating session with the employer for the purpose of arriving at a new union contract. At this meeting there were present, in addition to petitioner, other representatives of the union as well as several representatives of the employer. Near the end of the meeting an emotional outburst took place at which time the employer's representative raised his voice and accused petitioner of making ridiculously unreasonable demands. In reciprocal fashion, petitioner became upset and in a loud voice charged that the employer's representatives were offering nothing for the new contract.
Shortly after this incident petitioner demonstrated symptoms indicative of a heart attack, including pain in the area of the heart, "a funny feeling" in his neck and throat, and pain in his arm. After his return home he was taken to the hospital where he remained for 21 days. His treating physician diagnosed the condition as a myocardial infarction.
After a convalescence of three months he returned to work at the end of July but carried out his duties with aid from his fellow workers. He remained under the care of his physician and experienced angina pains which were relieved by taking nitroglycerin pills.
On November 15, 1971 petitioner suffered another heart attack resulting in further hospitalization. This was diagnosed as another myocardial infarction of the same wall as the first, involving another branch of the same vessel. Thereafter he never returned to work.
As it is not uncommon in patients with heart episodes, petitioner suffered from preexisting underlying arteriosclerotic *175 heart disease with complicating diabetes. The testimony of the physicians produced by petitioner was that both infarctions and the ultimate total permanent disability were causally related to the tension and excitement of the negotiating session of April 13, 1971. The compensation judge found that the occurrence on that date was an accident arising out of and in the course of the employment and, furthermore, accepted the reliability of the conclusions of petitioner's physicians on the issue of causation as it related to both infarctions.
The primary contention asserted by respondent employee is that the incident at the contract negotiation session did not arise in the course of employment and hence the consequent injury is not compensable.
This issue as it pertains to a setting of a labor negotiation is a novel one in the State of New Jersey. Does an accident occurring during a bargaining session between the employer and employee, who is present as the shop steward and representative of the authorized union, after normal working hours on the employer's premises arise "in the course of employment" as required by the Workmen's Compensation Act (N.J.S.A. 34:15-1)?
We must approach this issue with the established tenet that the act should be given a liberal interpretation to effect the social policy of providing a remedy for injuries sustained by employment. Tocci v. Tessler & Weiss, Inc., 28 N.J. 582 (1959); Complitano v. Steel & Alloy Tank Co., 63 N.J. Super. 444 (App. Div. 1960), rev'd on dissenting opinion below, 34 N.J. 300 (1961). This liberal approach in favor of employees has served to extend the many fact patterns held to constitute activities "arising out of and in the course of employment." See, e.g., Gerard v. American Can Co., 32 N.J. Super. 310 (App. Div. 1954); Meo v. Commercial Can Corp., 80 N.J. Super. 58 (App. Div. 1963); Cavalcante v. Lockheed Electronics Co., 85 N.J. *176 Super. 320 (Cty. Ct. 1964), aff'd 90 N.J. Super. 243 (App. Div. 1966).
The basic rule for determining that an injury arises in the course of employment is that it take place within the period of employment at a place where the employee reasonably may be and while he is fulfilling his duties or engaged in doing something incidental thereto. Tocci v. Tessler & Weiss, Inc., supra, 28 N.J. 582; 1 Larson, Workmen's Compensation Law, § 14.00 (1972).
A corollary to this rule is that an injury is compensable if it "arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment." Buerkle v. United Parcel Service, 26 N.J. Super. 404, 407 (App. Div. 1953). An employee does not have to be actually engaged in work for the employer at the time of the accident. Van Note v. Combs, 24 N.J. Super. 529, 533 (App. Div. 1953).
In seeking to apply the liberal interpretation of the Workmen's Compensation Act in favor of employees our Supreme Court has developed the "mutual benefit doctrine" in cases arising out of an employee's recreational or educational activities. Complitano v. Steel & Alloy Tank Co., supra, 63 N.J. Super. 444, rev'd 34 N.J. 300; Cuna v. Bd. of Fire Commissioners, 42 N.J. 292, 305 (1964); Strzelecki v. Johns-Manville, 65 N.J. 314, 317 (1974).
It is manifest to this court that the so-called "mutual benefit doctrine" should be applied to the facts of this case as a key factor in determining compensability. See Kennedy v. Thompson Lumber Co., 223 Minn. 277, 26 N.W.2d 459 (Sup. Ct. Minn. 1947).
The petitioner was a shop steward and as such served the mutual interests of the employees and the employer. His function in that capacity was to deal with the employer on a day-to-day basis in solving employee problems and grievances, in order to assist in a continual flow of production without unnecessary interruptions. Although he *177 represented the union and the employees, his daily activities incidentally benefited the employer as well in maintaining peace and equanimity in the plant.
His participation in the contract talks were, of course, as representative of the employees. Nevertheless, the successful consummation of an agreement would have benefited not only the employees but also the employer. Obviously the meeting took place for their mutual interest in presenting their views and arriving at a compromise solution which would be codified in a contract acceptable to both. Without such a contract the employer would probably have been unable to carry on his business. The presence of petitioner on behalf of the union was essential for the advancement of the interests of the employer in arriving at a mutually satisfactory contract which would assure him of labor peace and uninterrupted production and sales. See Gerard v. American Co., supra, 32 N.J. Super. 310.
In fact, the present milieu of unions and union representatives in most industries of any appreciable size dictates the current acceptance of the truism that an employer cannot exist without negotiation and agreement with a team of union representatives. In such a structured pattern of employer-employee relationships it follows that the union representative  the shop steward  is as essential a part of conducting a business as the employer's management personnel. What the union representatives do and how they fashion their demands is an essential part of every unionized business, and their participation in the bargaining struggle necessarily accrues in some measure to the interest and benefit of the employer.
Added to this factor of mutual benefit to employer and employee are other tangible indicia pointing to the fact that the negotiating activity was reasonably incidental to the employment. Among these are the fact that the meeting took place at the employment premises at the request or acquiescence *178 of the employer and at a point in time immediately after termination of production work.
Respondent employer cites several cases which deny compensability for accidents arising out of union activities. Each of the cited cases is distinguishable in that they involve unilateral union activities which took place for the sole benefit of the employee and the union.
In Fantasia v. Hess Oil, 110 N.J. Super. 360 (Cty. Ct.), aff'd 113 N.J. Super. 229 (App. Div. 1971), the injury and death resulted from an auto accident while the employee was on a picket line outside the employer's premises in connection with a strike or lockout. The court concluded that this activity was not work-connected because it was clearly not in the interest of the employer and constituted a union activity after the employer-employee relationship no longer existed.
A similar rationale was applied by the Michigan Supreme Court in Tegels v. Kaiser-Frazer Corp., 329 Mich. 84, 44 N.W.2d 880 (1950), where the employee bumped his leg while attending a union meeting at the plant from which the employer and his representatives were expressly excluded. To the same effect is the holding in Pacific Indemnity Co. v. Industrial Accident Comm'n, 27 Cal. App.2d 499, 81 P.2d 572 (D. Ct. App. 1938), where the employee was also attending a union committee meeting where no employer representative was present. See generally, 1 Larson, supra at § 27.33.
We hold, as did the workmen's compensation judge, that the accident, namely, the heart attack, arose out of and in the course of petitioner's employment.
Respondent employer also attacks the award of total permanent disability so far as it is based upon the second infarction of November 15, 1971, contending that there is insufficient credible evidence to support the compensation judge's finding that the first work-connected incident in April contributed to the occurrence of the second infarction *179 of November and the ultimate finding of total permanent disability.
Our review on this score is, of course, a limited one, namely, to determine whether there is sufficient credible evidence in the record to support the finding below. Close v. Kordulak Bros., 44 N.J. 589 (1965); Szumski v. Dale Boat Yards, Inc., 48 N.J. 401 (1967); State v. Johnson, 42 N.J. 146 (1964); De Angelo v. Alsan Masons, Inc., 122 N.J. Super. 88 (App. Div. 1973), aff'd 62 N.J. 581 (1973). We are not called upon to make an independent finding on the record.
With that limited appellate function in mind, it appears from the testimony of petitioner's treating physician and the examining expert that in their opinion the second infarction was causally related to the April incident. Dr. Grunt pointed out that both infarctions were in the same inferior wall of the myocardia and probably involved branches of the same vessel. On questioning by the judge, he articulated the physiological substantiation for his opinion substantially as follows: that his patient continued to suffer from angina and coronary insufficiency after the first attack and that the first infarction consisted of scar tissue, thereby reducing the available muscle to pump the same amount of blood. This imbalance between the demand for blood and its availability because of the reduction of viable tissue, superimposed on the effect of advancing coronary atherosclerosis, created a greater burden or stress on the remaining muscle, subjecting the patient to a greater probability of further attacks.
Dr. Lieb arrived at the same conclusion through another route, namely, that the area weakened by the first infarction made petitioner more susceptible to the effects of his work in the intervening period and set the stage for the second infarction.
Of course, the causal connection as to both the first and second infarctions was disputed by Dr. Lewis, the expert *180 produced by respondent. Nevertheless, the compensation judge affirmatively pointed out that the testimony of petitioner's physicians on the issue of causal relationship of both the first and second infarctions was "much more * * * convincing" than that of respondent's physician. We find his conclusion to be a reasonable one based upon sufficient credible evidence in the record. The opinion in Schiffres v. Kittatinny Lodge, Inc., 39 N.J. 139 (1963), cited by respondent on the issue of causation, is not controlling in view of the differing facts involved.
The judgment of the Workmen's Compensation Division is affirmed.