Repco Products Corp., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Marian Habecker, Widow of James Habecker, Deceased, Respondents.

Argued March 7, 1977, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three. Reargued September 15, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT.

*David L. White,* with him *John F. McElvenny,* for appellant.

*Thomas F. McDevitt,* with him *James N. Diefenderfer,* for appellees.

Opinion by Judge Crumlish, Jr., December 2, 1977:

This is an appeal by Repco Products Corp. (Appellant) from a decision of the Workmen's Compensation Appeal Board (Board) affirming the referee's grant of compensation to Marian Habecker (Claimant) due to the death of her husband (Decedent).

As found by the referee, Decedent died of injuries sustained from a blow struck by a co-worker. The referee found that the attack arose from "reasons regarding decedent's employment" and awarded benefits to Claimant. The Board affirmed without taking any further testimony.

Appellant argues that the attack was the result of discordance which was personal to Decedent and that, pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. (Act), compensation must be disallowed as it was not an "injury" as it is defined in the Act.

Section 301(c), 77 P.S. §411, states:

'Injury,' 'personal injury,' and 'injury arising in the course of his employment' defined

(1) . . . The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer. . . .

According to testimony, the immediate precipitant of the fatal blow was a near accident that occurred the prior afternoon which caused an argument the subsequent morning during which Decedent insulted the assailant. There was also abundant testimony that

the root cause of the attack was pre-existing animosity between assailant and Decedent that had developed directly out of work-related disputes. Therefore, the question raised by this appeal is whether an injured party may be compensated for injury received in the course of his employment from an assault due to personal animosity arising from work-related disputes. We hold that such an injury is compensable.

The Act in our view would not express the intention of the legislature if it barred compensation in a case such as this. The statute bars compensation where the injury was caused by the act of a third party intended to injure the employe "because of reasons personal to him, *and not* directed against him as an employe or *because of his employment*."[1] (Emphasis added.) Bearing in mind the traditionally liberal interpretation accorded to the Act,[2] if it can be shown that the assault occurred because of the employment, it will be compensable. If animosity develops from work-related disputes, the animosity has developed *because of the employment* and is therefore compensable.

In accord with this interpretation is the case of *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 10 Pa. Commonwealth Ct. 247, 309 A.2d 842 (1973), where the injured party was struck several days after a work-related incident. The Court also noted the Act is to be liberally construed due to its remedial nature and that the employer has the burden of proving that the assailant intended to injure the victim due to personality differences.

---

[1] Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411.

[2] *See Cleland Simpson Co. v. Workmen's Compensation Appeal Board*, 16 Pa. Commonwealth Ct. 566, 571, 332 A.2d 862, 865 (1975) ; *General Tire and Rubber Co. v. Workmen's Compensation Appeal Board*, 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975).

This position is supported by *McBride v. Hershey Chocolate Corp.*, 200 Pa. Superior Ct. 347, 188 A.2d 775 (1963). That case is similar to the case at bar in that there was some dispute over whether the motive for an assault was purely personal animosity or animosity developed from work-related disputes. The Superior Court noted that the "trial court properly charged that the jury must find that the reasons for the attack were *purely personal*," (emphasis added), 200 Pa. Superior Ct. at 350, 188 A.2d at 777, in order for the resulting injuries to be non-compensable. The inference is that if the motivation for the assault were not "purely personal," that is, if it had arisen out of a work-related dispute, the resulting injuries would be compensable. There the jury found that animosity was not work-related but the only arguably work-related incident had occurred some eight years before the assault.

The motivation of the assailant is thus a question of fact which the trier of fact, in this case the referee, must determine. *McBride v. Hershey Chocolate Corp., supra,* 200 Pa. Superior Ct. at 353-54, 188 A.2d at 780. Where the compensation authorities found against the party with the burden of proof, our Court is limited in its review to a determination as to whether the findings of the referee are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. That the referee has disregarded other conflicting evidence is immaterial since it is for him to resolve conflicts in testimony. *Shoup v. Allegheny Lutheran Home,* 25 Pa. Commonwealth Ct. 528, 360 A.2d 278 (1976).

Even the most cursory review of the testimony supports the referee's findings since both the assailant and a second witness specifically testified that the fatal fight arose out of animosities developed in the

course of Decedent's employment. Decedent was the maintenance worker for the machine upon which the assailant worked. The two argued about the repairs done on the assailant's machine and the assailant's desire to assist or learn how to repair the machines. For example, the assailant testified as follows:

"Q  Now, sir, would you tell the Referee the circumstances surrounding your fight with Mr. Habecker, starting how the fight began, when it began and the circumstances?

"A  Well, the circumstances were that he was belittling me for a time.

"REFEREE: Belittling for a time?

"ANSWER: Needling.

"MR. MELENDEZ:

"A  One day like sometimes when my machine broke he was suppose [sic] to fix it I offered myself to help him he always told me nasty things you know like get the hell out I don't need your help and all that stuff. . . .

"Q  You wanted to help him fix the machine, is that right?

"A  Right.

"Q  And he wouldn't let you?

"A  No.

"Q  Then what happened?

"A  Since I wasn't doing nothing until he fixed the machine I offered my help. He said he didn't want it so I just walked away from him.

"Q  How many times did this happened [sic]?

"A  A few times.

"Q  Two or three. . . .

"A  Four.

"Q  Is this the starting of the trouble between you two the fixing of the machine?

"A  Yes."

He later testified

"Q The difficulty between you and Mr. Habecker rose from your work at the plant, right?

"A Right."

Another witness testified that the dispute may have originated out of Decedent's representation of assailant as union shop steward. The witness testified as follows:

"Q Mr. Capriotti, you said that Mr. Habecker and Mr. Melendez didn't get along for some time?

"A They had a dispute about the union business, he was a steward at the time and didn't like the way things were done.

"Q What was the dispute about?

"A About rates, different rates.

"Q What kind of rates?

"A That they should be increased, you know, the company, they should fight for more for the people.

"Q Who was saying that they should fight for more?

"A Angel Melendez was telling Jimmy Habecker.

"Q That Habecker should fight for more rates?

"A Right."

Our research fails to disclose a case in Pennsylvania holding that an injury arising out of activities flowing from union office, such as shop steward, are within the scope of the employe's employment for the purposes of Section 301(c) of the Act, 77 P.S. §411. There is, however, abundant authority in other jurisdictions for that proposition. The basic theory behind such of those holdings is that certain union activities are mutually beneficial to both labor and management and an accident flowing from such activities should be compensable since the activity is in the furtherance of the employer's business. This is the case before us since the argument between Decedent and assailant may have flowed from Decedent's resistance

to assailant's demand that the union press for higher wages.

Thus, in *Herndon v. UAW, Local No. 3,* 56 Mich. App. 435, 438, 224 N.W. 2d 334, 335 (1974), the Michigan court noted:

> [T]he processing of grievances by a chief union steward is an activity which is in the interest of the employer in that it provides a method by which labor-management disputes can be resolved in an orderly fashion. Accordingly, we hold as a matter of law that Hopkins' activities in processing grievances were activities carried on on behalf of Chrysler.

In New Jersey, a heart attack suffered by an employee who was representing the union at a bargaining session was held compensable because

> [t]he petitioner was a shop steward and as such served the mutual interests of the employees and the employer. His function in that capacity was to deal with the employer on a day-to-day basis in solving employee problems and grievances, in order to assist in a continual flow of production without unnecessary interruptions. Although he represented the union and the employees, his daily activities incidentally benefits the employer as well in maintaining peace and equanimity in the plant.

*Salierno v. Micro Stamping Co.,* 136 N.J. Super. 172, 176-77, 345 A.2d 342, 344 (1975).

*See also Gerand v. American Can Co.,* 32 N.J. Super. 310, 108 A.2d 293 (1954); *Fidelity and Casualty Co. v. Landis,* 89 Ga. App. 100, 78 S.E. 2d 878 (1953).

Of course, not every union activity can or should be compensable. In *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973), we held that injuries sustained while going out on strike were not compensable because that

represented an "abandonment of employment, or an action wholly foreign to the claimant's employment." *Universal Cyclops Steel Corp. v. Krawczynski, supra,* 9 Pa. Commonwealth Ct. at 188, 305 A.2d at 764.

This approach is consistent with the Act which defines "injury by an accident in the course of his employment" to include all injuries "sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer." Section 301(c) of the Act, 77 P.S. §411. If it can be shown that the union activity which causes the injury is in furtherance of the business or affairs of the employer, there is no reason why that injury should not be compensable.

Lastly, we hold that there is no merit to Appellant's claim that the factual findings of the referee were incomplete. The referee's findings were amply supported by the evidence presented to him.

Accordingly, we

### ORDER

AND NOW, this 2nd day of December, 1977, the decision of the Workmen's Compensation Appeal Board is hereby affirmed.

Judge MENCER dissents.

---

CONCURRING OPINION BY PRESIDENT JUDGE BOWMAN:

I concur in the result as I am in accord with the majority view that there is sufficient evidence to support a conclusion that the incident in question and the resulting "injury" was the product of a dispute between fellow employees with respect to their roles and responsibilities in the operation and maintenance of the employer's machinery and was not of a nature personal to either of them within the exclusionary language of Section 301(c). In my opinion, it is not necessary to reach the issue of whether a possible rea-

son for the confrontation between these fellow employees and its tragic result arose out of decedent's role as a shop steward. I emphatically do not agree that a dispute over union matters between a shop steward and a fellow employee union member which culminates in a physical assault is a compensable injury within the meaning of Section 301(c).